IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRIAN PROUT, | : | |
| Petitioner, | : | |
| v. | : | CIVIL ACTION |
| | : | NO. 14-3816 |
| NANCY GIROUX, SUPERINTENDENT, | : | |
| SCI FAYETTE et al., | : | |
| Respondents. | : | |

**Jones, II      J.**                                                      **April 29, 2016**

## MEMORANDUM

Brian Prout ("Petitioner") has filed counseled objections, (Dkt No. 20 [hereinafter Objs.]), to the Report and Recommendation ("R&R") of the Honorable Lynne A. Sitarski, United States Magistrate Judge. (Dkt No. 19 [hereinafter R&R].) The Government did not respond.

The Court overrules Petitioner's objections and dismisses Petitioner's Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254.

### I.      Background

#### a.  Underlying Facts

Petitioner was arrested on May 19, 2003 and charged with the robbery and the murder of Anthony "Ant Man" Harris during the late night/early morning hours of February 7-8, 2003. The following facts were supported by evidence at the trial:

> Richard Brown ran a drug operation in West Philadelphia and employed [Petitioner], Christopher Smith, and Vincent Smithwick as gang enforcers. Anthony Harris (victim)...began selling drugs early in 2003 on a nearby corner not under Brown's control. On February 7, 2013, Brown, Smithwick, Smith, and [P]etitioner, discussed plans to kill Powell and the victim in order to eliminate competition.

1

Later that day, Brown, Smith, Smithwick and [P]etitioner decided to apprehend Powell in an alleyway. Powell never appeared...All four men were armed...At Brown's request, Smith left to locate the victim at the home of T[ie]sha Williams and Tonya Brister, who were friends with the victim...Petitioner, Brown, and Smithwick waited...for Smith to return with the victim...

The victim drove with Smith in his own car to the location where Brown, Smithwick, and [P]etitioner were waiting...arriving around 10:00 p.m. Petitioner approached the victim's car, tapped his AK-47 on the window, and told him to get out. The victim got out of the car and ran.

Petitioner fired six or seven shots at the victim, striking him in the leg and knocking him to the ground. Smith and [P]etitioner picked up the victim, who was still conscious, and placed him the back seat of the Taurus. Hyneith Jacobs, a young man who sold drugs for Brown, witnessed [P]etitioner shoot the victim, and then move the victim to the back of the Taurus with Smith's help...

...[I]n the car [with Smithwick] were Smith, [P]etitioner and the victim....Smithwick shot the victim in the forehead....

Once the group arrived at the Schuykill River...with [P]etitioner's assistance, [Anthony Petty] tied up the victim's shoulders with rope and weighted his body down with bricks. Jacobs...helped Petty, Smithwick and [P]etitioner drag the victim's body into the water...

That same evening, Jack Darrah, a CSX Railroad employee, was driving to the company's facility when he noticed...four men dragging a large, motionless body toward[] the river. Darrah radioed railroad security, who called 911. Police arrived around 2:15am [on February 8, 2003], at which point the group of men was gone. Police noticed a trail of blood and "drag marks" that led to the river's edge. Police followed footprints near the blood trail and discovered the victim's body...

During the investigation of the scene, police recovered one .357 cartridge casing, one Timberland boot, a pager covered in blood, and multiple layers of duct tape formed into a large circle. Acting on a tip from a confidential informant...Detective John McNamee obtained an arrest warrant for Brown on May 19, 2003, which listed unit 2006 of the Lincoln Green Apartments at 4000 Presidential Boulevard (Lincoln Green Apartment), as an address where Brown might be found. [The detective also obtained a search warrant for that location, to search for Brown...] Upon entering the apartment...police discovered [P]etitioner and Jawayne Brown, who were arrested on outstanding warrants. Homicide detectives observed two handguns, one atop a pile of clothes in a closet and one underneath a couch in the living room; on that basis, the detectives called the Homicide Division to obtain a search and seizure warrant. Two .357 Sig pistols were recovered from that location, one of which was later found to be the weapon that fired the .357 FCC found near the river's edge. In addition, police found two bulletproof vests, a full magazine for a .45 handgun, and two pairs of black Nike sports gloves.

(R&R at 1-4 (quoting *Com. v. Prout*, CP-51-CR-0808073-2004, slip op. at 2-6 (Ct. Com. Pl. July 20, 2012) (internal citations omitted.))

Petitioner, Brown, Smith, and Petty were jointly tried as co-defendants in a jury trial in the Court of Common Pleas of Philadelphia County, with the Honorable Renee Cardwell Hughes presiding. *Com. v. Prout*, No. CP-51-CR-0808073-2004 (Ct. Com. Pl. 2004) (hereinafter "Crim Dkt".). Petitioner was represented by Michael Wallace, Esq., with William Bowe, Esq. (collectively "Trial Counsel"), serving as mitigation counsel. (Crim. Dkt at 15.) On August 23, 2005, the jury found Petitioner guilty of murder in the first degree, 18 Pa. Cons. Stat. § 250, robbery, *id.* at § 3701, kidnapping, *id.* at § 2901, carrying firearms without a license, *id.* at § 6106, and criminal conspiracy, *id.* § 903. (Crim. Dkt at 3-4.) Petitioner was sentenced to life imprisonment for the first degree murder conviction, and also ten-to-twenty years for the robbery conviction, ten-to-twenty years for the kidnapping conviction, ten-to-twenty years for the conspiracy conviction, and three-and-a-half-to-seven years for the carrying firearms without a license conviction, to be served consecutive to the life sentence and currently with one another. (Crim. Dkt at 3, 13-14.)

### b. Direct Appeal and Pennsylvania Post Conviction Relief Act Appeal

Petitioner, represented by Barnaby Wittels, Esq., and Carole McHugh, Esq. (collectively "Appellate Counsel"), filed a timely direct appeal. The Trial Court affirmed Petitioner's conviction and judgment of sentence. *Com. v. Prout*, 2670 EDA 2005, slip op. at 15 (Ct. Com. Pl. July 19, 2007). Petitioner appealed the Trial Court's affirmance to the Superior Court, and raised three points. (Pet'r's Ex. D-6 [hereinafter Pet'r's Trial App.]) The Superior Court affirmed the convictions and sentence. *Com. v. Prout*, 2670 EDA 2005, slip. op. at 6 (Pa. Super. March 31, 2009)). Petitioner's timely petition for allowance of appeal before the Pennsylvania Supreme Court was denied in December 2009. *Com. v. Prout*, 603 Pa. 708 (Pa. 2009).

Petitioner filed a timely, *pro se* petition for relief under Pennsylvania's Post-Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. §§ 9541 *et seq.* Mitchell Scott Strutin, Esq. ("PCRA Counsel") was appointed as PCRA Counsel. PCRA counsel filed an Amended PCRA Petition raising twelve claims. (Pet'r's Am. PCRA Pet.) The PCRA Court provided Notice Pursuant to Pennsylvania Rule of Criminal Procedure that Petitioner's requests would be denied. *Com. v. Prout*, CP-51-CR-0808073-2004, slip. op. at 2 (Ct. Com. Pl. March 22, 2012).

Petitioner filed a Concise Statement of Errors Complained of on Appeal. (Pet'r's Ex. D-20 [hereinafter Pet'r's PCRA App.].) The PCRA Court affirmed dismissal. *Prout*, CP-51-CR-808073-2004, slip. op. at 9-33 (Ct. Com. Pl. July 20, 2012). Petitioner appealed, and the Superior Court affirmed. *Com. v. Prout*, 1343 EDA 2012, slip. op. at 10 (Pa. Super. Jan. 9, 2013). The Pennsylvania Supreme Court denied *allocator* review. *Com. v. Prout*, 64 A.3d 272 (Pa. Aug. 23, 2013).

### c.   Petitioner's Habeas Claims

Petitioner timely filed the instant habeas action. (Dkt No. 1.) With permission of the Magistrate Court, Petitioner filed an amended, counseled Petition. (Dkt No. 9 [hereinafter Am. Pet.].) The Government responded, (Dkt No. 16 [hereinafter Resp.]), and Petitioner filed a Reply. (Dkt No. 17 [hereinafter Rep.].)

### d.   Magistrate Court's Report and Recommendation and Petitioner's Objections

The Magistrate Court found that all the claims were without merit or were procedurally defaulted. (R&R.) Petitioner objects to every single ruling of the Magistrate Judge. (Objs.) The Government did not respond to the objections.

## II.   Legal Standards

### a.  Standard of Review

When objections are filed to the R&R of a Magistrate Judge, the District Court must review *de novo* those portions of the R&R to which objection is made. 28 U.S.C. §636(b)(1). If there are no objections to the R&R or when reviewing those portions of the R&R to which no objections are directed, the Court should, as a matter of good practice, "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b), advisory committee notes; *see also Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987).

The Court reviews those portions of the R&R to which objection were taken *de novo*. As for the portion of the R&R to which no objection was made, the Court reviews the R&R for clear error.

### b.  Procedural Default

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. §§ 2241-66 ("AEDPA") deals with the right of all persons in state custody, or in federal custody, to file a petition in a federal court seeking the issuance of a writ of habeas corpus. In the context of a prisoner in state custody, if such a writ of habeas corpus is issued by a federal court, the prisoner will be released from such state custody on the grounds that certain rights accruing to that prisoner pursuant to the United States Constitution have been violated; habeas corpus motions pursuant to AEDPA are the only possible means of obtaining this type of relief from state custody. *Benchoff v. Colleran*, 404 F.3d 812 (3d Cir. 2005); *Coady v. Vaughn*, 251 F.3d 480 (3d Cir. 2001).

By means of AEDPA, Congress also created a series of intentionally restrictive gate-keeping conditions which must be satisfied for a prisoner to prevail in his petition seeking the issuance of a writ of habeas corpus. The strict AEDPA gate-keeping procedures were enacted by Congress in order to support the policy of creating finality with respect to state and federal criminal prosecutions. One such gate-keeping procedure is the requirement of exhaustion. "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State..." 28 U.S.C. § 2254(b)(1); *see also Houck v. Stickman*, 625 F.3d 88, 93 (3d Cir. 2010) (citing 28 U.S.C. § 2254(b)(1)) ("[A] district court ordinarily cannot grant a petition for a writ of habeas corpus arising from a petitioner's custody under a state court judgment unless the petitioner first has exhausted his available remedies in state court."). Petitioner must have "fairly presented" the federal habeas claims to the state courts. *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Evans v. Court of Common Pleas, Delaware County, Penn.*, 959 F.2d 1227, 1231 (3d Cir. 1992) (citations omitted). "To 'fairly present' a claim, a petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999). A petitioner in Pennsylvania must appeal such claims to the Pennsylvania Superior Court. *Whitney v. Horn*, 280 F.3d 240, 250 n. 10 (3d Cir. 2002). Petitioner carries the burden of proving exhaustion. *Coady*, 251 F.3d at 488 (citing *Toulson v. Beyer*, 987 F.2d 984, 987 (3d Cir. 1993)).

Where a claim was not exhausted in state court, it is said to be procedurally defaulted. To bring a procedurally defaulted claim in federal proceedings, Petitioner must demonstrate either (a) cause for the default and actual prejudice arising from the alleged violation of federal law, or

that (b) failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). First, to establish the "cause" requirement, Petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Werts v. Vaughn*, 228 F.3d 178, 192-93 (3d Cir. 2000) (quoting *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986)). To establish the "prejudice" requirement, Petitioner must prove "not merely that the errors at...trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting this entire trial with error of constitutional dimensions." *Id.* at 193. Second, to establish a fundamental miscarriage of justice, Petitioner must demonstrate actual innocence. *Schlup v. Delo*, 513 U.S. 298, 324-32 (1995).

### c.  Merits Review

Where Petitioner's claims were adjudicated on the merits in state court, the AEDPA deference standard applies to this Court's review of the merits determination. *Rolan v. Coleman*, 680 F.3d 311, 321 (3d Cir. 2012). The AEDPA limits federal habeas review of state court judgments. *Werts*, 228 F.3d at 195. A petition for habeas corpus may only be granted if (1) the state court's adjudication of the claim "resulted in a decision contrary to, or involved in an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or if (2) the adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). When a claim has been adjudicated on the merits in state court, federal habeas review is limited to the record before the state court. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398-99 (2011).

### d. Ineffective Assistance of Counsel

The Sixth Amendment right to counsel "is the right to effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). To prove that counsel was ineffective, Petitioner must establish that (1) counsel's performance was constitutionally deficient, and (2) that deficiency prejudiced Petitioner. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance "requires showing that counsel made errors so serious that he or she was not functioning as the 'counsel guaranteed to the defendant by the Sixth Amendment.'" *Id.* In essence, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness" under prevailing professional norms. *Id.* at 688. Petitioner must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *Id.* at 690 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Prejudice requires showing that counsel's errors were serious enough to deprive the defendant of a fair trial. *Id.* at 687.

### III.    Discussion

Petitioner raised objections to all claims.[1] The Court addresses each in turn.

### a.    Objections to Claim One are overruled.

In Petitioner's Claim One objections, Petitioner makes two arguments related to (1) Trial Counsel's failure to seek suppression of weapons found at the Lincoln Green Apartment; and (2) Trial Counsel's failure to object to the Government's argument at trial that the handguns seized

---

[1] Many of Petitioner's "Objections" simply reiterate the underlying arguments in his Petition. The Court overrules any putative "Objections" which are in no way responsive to Judge Sitarski's analysis. *See Muhammad v. Walsh*, 2011 WL 6132821, at *1 n. 4 (E.D. Pa. 2011) (overruling objections where "Petitioner merely rehashes his arguments for habeas relief and fails to identify any errors made by [the Magistrate]"); *Cherry v. Wynder*, 2007 WL 983826, at *7-9 (E.D. Pa. 2007) (holding that objections which do not respond to magistrate judge's recommendation on claim, but instead repeat assertions raised in petition are properly overruled). The Court addresses only those Objections that properly assert challenges to Judge Sitarski's analysis. All other "Objections" are overruled.

at the Lincoln Green Apartment were the weapons used in the crime. (Objs. at 2-3.) The Court
will address each in turn.

### i. Trial counsel was not ineffective for failing to move to suppress evidence from Lincoln Green Apartments.

In Claim One, Petitioner alleged that trial counsel violated Petitioner's Sixth Amendment
rights by ineffectively failing to seek suppression of weapons found at the Lincoln Green
Apartment. (Dkt No. 9, Am. Pet. at 8-12.) Petitioner properly brought this claim before the
PCRA Court. (Pet'r's Am. PCRA Pet. ¶¶ 71-85.) The PCRA Court found that Petitioner did not
have standing to litigate a motion to suppress, did not have a reasonable expectation of privacy in
the Apartment, and did not demonstrate any prejudice from the introduction of the weapons as
evidence. *Prout*, CP-51-CR-0808073-2004, slip. op. at 10-12 (Ct. Com. Pl. July 20, 2012). The
PCRA Court noted that the lease was not under Petitioner's name, and that Petitioner had not set
forth how he had a reasonable expectation of privacy in the Apartment. *Id.* at 10. On appeal, the
Superior Court affirmed, holding that Petitioner's counsel was not ineffective for failing to file a
motion to suppress, as the motion would have failed. *Com. v. Prout*, No. 1343 EDA 2012, slip.
op. at 4-5 (Pa. Super. Jan. 9, 2013).

Petitioner makes one main argument: Petitioner was prevented from providing evidence,
now available in the form of an affidavit that post-dates the Superior Court's opinion, which
provides the factual basis of Petitioner's standing to assert a liberty interest in the Lincoln Green
Apartment. (Dkt No. 1, Petition at 9-14.)[2] The Magistrate Court denied the additional discovery
on the grounds that under AEDPA, the Court must rely on the factual record that was before the
Superior Court. (R&R at 17 (citing *Pinholster*, 131 S.Ct. at 1400.)) The Magistrate Court found
that the Superior Court's adjudication "did not involve an unreasonable application of *Strickland*,

---

[2] This affidavit was not referenced or incorporated in Petitioner's counseled amended habeas petition .

nor was it based on an unreasonable determination of the facts in light of the evidence." (R&R at 17.)

All of Petitioner's objections relate to Petitioner's argument that the affidavit can be properly considered by this Court, and that, if it is considered, it proves that Petitioner has standing to assert violations of his Fourth Amendment rights for the searches and seizures at the Lincoln Green Apartment. (Objs. at 2.) It follows that if Petitioner has standing to assert violations of his Fourth Amendment rights related to the searches and seizures at the Lincoln Green Apartment, then trial counsel was constitutionally deficient for failing to move to suppress the handguns recovered from the Lincoln Green Apartment. Petitioner argues that Petitioner did not present the affidavit to the state court due to Appellate Counsel's constitutionally deficient performance. (Objs. at 2.) Had Appellate Counsel not been constitutionally deficient, Petitioner argues, the state court would have seen the affidavit, and thus, this Court could consider the affidavit as evidence. (Objs. at 2-3.) In sum, Petitioner argues that "with the addition of Petitioner's testimony, Petitioner avers said motion [to suppress] would have been successful." (Objs. at 3.)

First, under AEDPA, the Court cannot consider the affidavit as it was not before the state court. *Pinholster*, 131 S.Ct. at 1398. Petitioner presents no case law to support granting an exception herein.

Second, based on the state court record, this Court affirms the Magistrate's finding that "the Superior Court's determination that Petitioner lacked standing to challenge the search was not objectively unreasonable." (R&R at 18.) As the Magistrate Court explained the:

> searched apartment unit was leased by Kevin Balow or Balou starting on January 3, 2003, and a PECO bill for the unit was under the name William Meeks. Within the unit, police found photo identification with Richard Brown's photograph but the name "Richard

Bond;" receipts indicating the furniture in the apartment had been purchased by Brown; and a medical insurance card for Brown without a photo.

(R&R at 18.) There was no physical evidence supporting Petitioner's claim for a liberty interest in the Lincoln Green Apartment. The Court agrees with the Magistrate Court that there was no evidence before the Superior Court supporting Petitioner's claim to standing for a Fourth Amendment challenge. Because Petitioner did, and does, not have a liberty interest in the Lincoln Green Apartment, Petitioner's trial counsel was not constitutionally deficient for failing to make a motion to suppress the handguns recovered from the Lincoln Green Apartment. Trial Counsel "cannot be deemed ineffective for failing to raise a meritless claim." *Werts*, 228 F.3d at 203 (citing *Com. v. Carpenter*, 555 Pa. 434, 725 A.2d 154, 161 (Pa. 1999)). The Superior Court did not unreasonably federal law.

Moreover, the Court notes that even if the Court could consider the affidavit – which it cannot- the outcome would be the same. The affidavit states:

> I, Brian Prout…informed my then attorney [Appellate Counsel]…that I was a visitor at the Lincoln Green [A]partment[]…before and during the times the Philadelphia Police officers stormed in and searched the apartment….I further instructed my then attorney…that I wanted him to Suppress all of the bogus—evidence (weapons) that w[ere] located at the Green [A]pt…

> Finally, I requested that attorney…to subpoena (William Meeks)…who[] was the lease holder at the [A]pt[.] at that time and (Tiesha Wiliams)…who[] was also a guest at the apartment at that time, whom at that time would have been willing to testify to all the above facts.

(Dkt No. 1, App'x A.) The affidavit is dated March 27, 2014. (Dkt No. 1, App'x A.)

This evidence would not grant Petitioner standing to wage a Fourth Amendment challenge to the seized evidence in the Lincoln Green Apartment. The Fourth Amendment guarantees an individual's right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. To invoke the exclusionary rule of the Fourth Amendment, a defendant must first establish standing. *United States v. Correa*, 653 F.3d

187, 190 (3d Cir. 2011) (citations omitted). Fourth Amendment standing "requires that the individual challenging the search have a reasonable expectation of privacy in the property searched . . . and that he manifest a subjective expectation of privacy in the property searched[.]" *United States v. Baker,* 221 F.3d 438, 441 (3d Cir. 2000) (citing *Rakas v. Illinois,* 439 U.S. 128, 143 (1978); *California v. Greenwood,* 486 U.S. 35, 39 (1988)). "This applies to all searches conducted by law enforcement, and the rule applies in the 'fruit of the poisonous tree' context." *United States v. Cobb*, 2009 WL 3806764, at *5 (E.D. Pa. 2009)). "The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *Rakas*, 39 U.S. at 130 n.1.

In some circumstances, a person, such as an overnight guest for example, may have a legitimate expectation of privacy in a residence that is not his or her own. *Minnesota v. Olson,* 495 U.S. 91, 98, (1990) ("To hold that an overnight guest has a legitimate expectation of privacy in his host's home merely recognizes the everyday expectation of privacy that we all share . . . [S]ociety recognizes that a houseguest has a legitimate expectation of privacy in his host's home."); *Minnesota v. Carter,* 525 U.S. 83, 88 (1998) ("[I]n some circumstances a person may have a legitimate expectation of privacy in the house of someone else."). These circumstances, however, are not present in this case.

Even in Petitioner's affidavit, Petitioner does not establish any connection to the Lincoln Green Apartment sufficient to confer a reasonable expectation of privacy. Petitioner refers to himself only as a "visitor" and a "guest" in the house. Guests "who [a]re obviously not overnight guests, but [a]re essentially present for a business transaction and [a]re only in the home a matter of hours," have no legitimate expectation of privacy in the dwelling. *Carter*, 525 U.S. at 90; *see also United States v. Torch,* 609 F.2d 1088, 1091 (4th Cir. 1979) (explaining that "occasional

12

presence, however, without any right to exclude others, is not enough" to establish a reasonable expectation of privacy) (citing *Rakas,* 439 U.S. at 128). Thus, even Petitioner's affidavit does not support his claim for standing. Given that Petitioner's affidavit does not affect his claim for standing, his Appellate Counsel was not constitutionally deficient for failing to present the affidavit as evidence to the state court.

Finally, the Magistrate Judge did not err by denying Petitioner's motion for discovery for the search warrant at issue in this claim. In Section 2254 cases, "[a] party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise." A habeas petitioner "is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). However, "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." Rule 6(a) of the Rules Governing § 2254 Cases. "A habeas petitioner may satisfy the 'good cause' standard by setting forth specific factual allegations which, if fully developed, would entitle him or her to the writ." *Han Tak Lee v. Glunt*, 667 F.3d 397, 404 (3d Cir. 2012) (quoting *Williams v. Beard,* 637 F.3d 195, 209 (3d Cir. 2011) (internal citations omitted)). There cannot be "good cause" for discovery to support a claim that Petitioner does not have standing to bring.

In conclusion, the Court overrules Petitioner's objections as to this portion of Claim One and adopts Judge Sitarski's R&R.

### ii. Trial Counsel was not ineffective for failing object to the Government's statement at trial that the handguns seized at the Lincoln Green Apartment were the weapons used in the crime.

In Claim One, Petitioner alleges that Trial Counsel was ineffective for failing to object when the prosecutor told the jury that the handguns seized at the Lincoln Green Apartment were the weapons used in the crime. (Am. Pet. at 10.) Petitioner properly brought this claim before the PCRA Court. (Pet'r's Am. PCRA Pet. ¶¶ 86-88.) However, Petitioner did not argue this claim on appeal to the Superior Court; rather, Petitioner only raised the aforementioned suppression issue. (Pet'r's PCRA App. ¶ 1.) The Magistrate Judge found that this claim was procedurally defaulted because Petitioner abandoned the claim on appeal to the Superior Court. (R&R at 19.)

Petitioner objects to the Magistrate Judge's reliance on *Gibson v. Schneidemantel*, 805 F.2d 135, 139 (3d Cir. 1986) in its determination that the claim was procedurally defaulted. (Objs. at 3.) The Magistrate Judge referred to *Gibson* in the following manner:

> "The nature of a claim of ineffective assistance is such that a state prisoner must present the specific error to the state courts." *See Lark v. Beard*, No. 1-1252, 2006 WL 1489977, at *12 (E.D. Pa. May 23, 2006) (citing [*Gibson*, 805 F.2d at 139] (claim that counsel was ineffective for inadequately explaining plea bargain is not the substantial equivalent of a claim that counsel was ineffective for failing to protect his client's juvenile status)).

(R&R at 20.) Petitioner argues that in *Gibson*, the two claims were "not based on the same factual predicate," whereas in this case, the claim regarding the failure to move to suppress the evidence and the claim regarding the failure to object to the Government's characterization of the evidence relate to the same factual predicate. (Objs. at 3-4.) The Court disagrees that the two claims at issue here stem from the same factual predicate. The factual predicate underlying the motion to suppress issue is whether or not Petitioner has a privacy interest in the Lincoln Green Apartment, and, more broadly, whether or not the handguns were constitutionally seized from the Lincoln Green Apartment. The factual predicate underlying the objection issue is whether or

not there was sufficient evidence presented at trial to support the Government's statement to the jury that the seized handguns could be traced to the underlying crime. These are distinct issues. Petitioner's appeal to the Superior Court on the former did not "fairly present" the latter to the state court.

Petitioner argues that it would be "manifestly unjust to not consider" this claim. (Objs. at 4.) Despite this conclusory statement, the Court finds that Petitioner has not shown cause for the default or actual prejudice. *Coleman*, 501 U.S. at 750. Petitioner has suffered no prejudice because this claim is meritless. There was evidence during the trial linking the recovered weapons to the crime. Testimony by Officer Carl Rone at trial revealed that one of the two .357 Sig Sauer semi-automatic hand guns recovered from the Lincoln Green Apartment matched the .357 Sig Sauer fired cartridge casing recovered by the crime scene and were consistent with the bullets extracted from the victim's body. (N.T. 7/19/05, 37:11-43:9.) Further, Smithwick testified that he shot and killed the victim with a .357 Sig. (N.T. 7/12/05 110:15-25; N.T. 7/1305 98:15-23.) Trial Counsel "cannot be deemed ineffective for failing to raise a meritless claim." *Werts*, 228 F.3d at 203 (citing *Carpenter*, 725 A.2d at 161). Thus, Petitioner has failed to make a showing of actual prejudice.

Finally, Petitioner has not shown that it would be a miscarriage of justice to fail to consider this meritless claim. Procedural default may be excused if Petitioner can demonstrate that failure to consider the claim would constitute a miscarriage because Petitioner is "actually innocent." *Murray*, 477 U.S. at 496. "Actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 615 (1998). "Petitioner will only demonstrate a colorable claim of actual innocence by establishing that, in light of all of the evidence, including that claimed to have been illegally admitted and that claimed to have been

15

wrongfully excluded or that which became available only after trial, the trier of fact would have

entertained a reasonable doubt of his guilt." *Terry v. Gillis*, 93 F.Supp.2d 603, 611 (E.D. Pa.

2000) (quoting *Wheeler v. Chesny*, 2000 WL 124560, at *2 (E.D. Pa. 2000) (internal citations

omitted)). This exception is "exceedingly narrow." *Tran v. Gillis*, 1999 WL 962539, at *7 (E.D.

Pa. 1999).

　　　　Petitioner has not alleged any facts to overcome the overwhelming evidence at trial

disproving Petitioner's putative "actual innocence" claims. As the Superior Court explained:

> The Commonwealth presented testimony that petitioner was a gang enforcer for Brown
> and that, on the night of February 7, 2003, [P]etitioner aided in the execution of the
> victim. Smithwick and Jacobs testified that [P]etitioner shot the victim with his AK-47 as
> the victim attempted to run for his life. [Smithwick testified that] Petitioner was present
> in the car when Smithwick ultimately killed the victim. Smithwick and Jacobs testified
> that [P]etitioner helped bind the victim's body with rope and weigh the body down with
> bricks. [Smithwick and Jacobs testified that] Petitioner then helped drag the body to the
> Schuylkill River's edge and gave the body the final shove into the water. Additionally,
> Smithwick testified that [P]etitioner removed the victim's necklace and received money
> from the sale of the [victim's] necklace.

*Prout*, CP-51-CR-0808073-2004, slip. op. at 11 (Ct. Com. Pl. July 20, 2012). Independent

review of the record confirms these factual statements. (*See* N.T. 7/12/05 92:7-123:21; N.T.

7/13/05 109:17-111:7, 119:19-23 (Smithwick); N.T. 7/14/05 102:16-133:11 (Jacobs.)) Petitioner

has presently absolutely no evidence to support his claim of actual innocence.

　　　　In conclusion, the Court affirms the Magistrate Court's ruling that this claim is

procedurally defaulted and that Petitioner has not shown cause to excuse the default.

### b.　Objections to Claim Two are overruled.

　　　In Claim Two, Petitioner contends that Appellate Counsel should have argued on direct

appeal that the Trial Court erred when it denied Petitioner's motion to compel the

Commonwealth to produce a pre-sentence report for Smithwick prepared in a separate criminal

matter. (Am. Pet. at 13-15.) Trial Counsel moved that the Commonwealth should have disclosed

the report as *Brady*[3] material because the report contained information related to Smithwick's mental functioning and drug use that counsel could have used to impeach Smithwick's testimony. (Am. Pet. at 14.) The trial court denied the motion. (R&R at 39 n. 14.)

The PCRA Court found that this claim was procedurally defaulted because Trial Counsel never objected on the record to the exclusion of the presentence report. *Prout*, CP-51-CR-0808073-2004, slip. op. at 12. (Ct. Com. Pl. July 20, 2012). Pursuant to Pennsylvania Rule of Appellate Procedure 302(a) ("Rule 302"), "issues not raised in the lower court are waived and cannot be raised for the first time on appeal." *Id.* The Superior Court affirmed, explaining that Appellate Counsel could not be deemed ineffective for failing to raise an argument that Trial Counsel had failed to preserve pursuant to Rule 302. *Prout*, 1343 EDA 2012, slip. op. at 6 (Pa. Super. Jan. 9, 2013). The Magistrate Court agreed and found that this argument was procedurally defaulted. (R&R at 30-31.)

Petitioner argues that Trial Counsel did preserve this objection by arguing a motion *in limine*. (Objs. at 7.) Petitioner argues that trial counsel did not have to further object to the exclusion of the presentence report in order to preserve the motion. (Objs. at 7.) Petitioner refers the Court to *City of Long Beach v. Farmers & Merchants Bank*, 81 Cal.App.4th 780, 785 (2000) (citing *People v. Chavez*, 26 Cal.3d 324, 350 n. 5 (1980)) for the proposition that "[t]here is no duty to object when the existing state of the law would render an objection futile." (Objs. at 7.)

The citations to California state court decisions fail to address the relevant legal standard at issue here. Under the doctrine of procedural default in Pennsylvania and in this Circuit, a federal habeas court is prohibited from considering constitutional claims where a state court has refused to entertain their merits on the basis of an adequate and independent state procedural rule. *Glass v. Vaughn*, 65 F.3d 13, 15 (3d Cir. 1995). Rule 302 is an "adequate and independent state

---

[3] *Brady v. Maryland*, 373 U.S. 83 (1963).

procedural rule." *Phillips v. Diguglielmo*, 2013 WL 706240, at *4 (W.D. Pa. 2013) (collecting

cases). In this case, the state court found that Rule 302 barred review on the merits. *Prout*, 1343

EDA 2012, slip. op. at 6 (Pa. Super. Jan. 9, 2013). The Magistrate Court explained that "a

challenge to the validity of the Superior Court's application of its own procedural rule…is not

cognizable on habeas review." (R&R at 31.) This Court agrees. Thus, Petitioner's objection is

irrelevant given that the Superior Court barred review of this issue pursuant to Rule 302. *See*

*Harris v. Reed*, 489 U.S. 255, 262 (1989). This claim is procedurally defaulted.

Further, the Magistrate Court ruled that Petitioner did not show cause and prejudice to

excuse his default, nor show that failure to consider the claim would be a miscarriage of justice.

(R&R at 31-32.)[4] Petitioner's objection is that "he is actually innocent of the crimes he has been

convicted of." (Objs. at 7-8.) Petitioner has presently absolutely no evidence to support his claim

of actual innocence. The Court rules that Claim Two is procedurally defaulted and no exceptions

excuse the default.

### c.   Objections to Claim Three are overruled.

Petitioner alleges that the Commonwealth violated Petitioner's due process rights when it

failed to disclose: (1) the names of Hyneith Jacobs and Tiesha Williams as potential witnesses in

pretrial discovery; (2) a statement Jacobs gave to homicide detectives in May of 2004; and (3)

copies of the warrants and inventory of evidence seized at the Lincoln Green Apartment. (Am.

Pet. at 16-20.) Further, Petitioner argued that Appellate Counsel was ineffective for failing to

allege the prosecutorial misconduct and abuse of discretion by the Trial Court on direct appeal.

The Magistrate Court found that: (1) the claims related to Jacobs were exhausted, but were

---

[4] Petitioner further seeks to raise a claim that PCRA Counsel was ineffective for failing to allege an ineffective assistance of counsel claim based on Trial Counsel's failure to timely object. Petitioner raises this claim for the first time in his objections. "The Court is not required to consider the new arguments raised, for the first time, in Petitioner's Objections to the R&R." *Stromberg v. Varano*, 2012 WL 2849266, at *2 (E.D. Pa. 2012). The Court will not consider this claim.

meritless; (2) the claims related to Williams and the search warrants were procedurally defaulted.

(R&R at 33-41.) Petitioner objects to both holdings. The Court affirms both as follows.

### i.  The Jacobs claims are meritless.

Petitioner makes two objections regarding the Jacobs claims: (1) the Magistrate Court

erred in finding that the issue of prosecutorial misconduct during the *ex parte* order was not

cognizable for review; and (2) the Magistrate Court erred in finding that the Superior Court

appropriately applied *Brady*, because, contrary to the Superior Court's ruling, the Jacobs's

statement was (a) exculpatory, (b) impeaching, and (c) prejudicial. (Objs. at 9-10.) The factual

context of these claims is as follows:

> On May 12, 2004, Jacobs gave a signed statement to homicide detectives which provided additional information regarding the crimes at hand. While homicide detectives continued their investigation, a preliminary hearing was held on August 4, 2004. During the hearing[,] Jacobs['s] name was mentioned on cross-examination as Smithwick had given two statements to the police describing how Jacobs[] had assisted in putting the body in the river.
>
> Approximately a week after the preliminary hearing, [Petitioner] requested discovery. Defense counsel, however, was not informed of Jacobs['s] statement until the third day of trial. The Commonwealth claimed that it did not know of the interview until mid-May 2005. Immediately thereafter, the Commonwealth applied for a protective order pursuant to Pa. R. Crim. P. 573(F) due to "safety reasons…until the Commonwealth saw fit to call that witness to the stand." The [trial judge] found that a protective order was warranted [and directed] that both the fact and content of Jacobs['s] pretrial statement remain confidential until such time as his direct testimony was contemplated at trial.
>
> At trial, when the Commonwealth revealed the existence of Jacobs['s] statement, it had not decided whether or not to call Jacobs[]….[Petitioner] objected as he had not been advised of the statement during pretrial discovery.

*Prout*, 2670 EDA 2005, slip. op. at 7-8 (Pa. Super. March 31, 2009). Upon consideration of these

issues *de novo*, the Court overrules the objections and affirms the Magistrate Court's rulings.

**1.  Claims about prosecutorial misconduct relating to the issue of the *ex parte* order are not cognizable for federal review.**

Petitioner objects to the Magistrate Court's finding that any claims for prosecutorial misconduct related to the trial court's issuance of the *ex parte* protective order was not cognizable for federal review. (Objs. at 9.) The Magistrate Court held that claims about prosecutorial misconduct during the *ex parte* hearing and order process were unexhausted. (R&R at 34 n. 15.) Petitioner did not argue prosecutorial misconduct during the *ex parte* hearing in either his direct or his collateral appeal. Petitioner provides no argument or case law to explain why these claims are not procedurally defaulted. (Objs. at 9.) Where objections do not respond to the Magistrate's recommendation, but rather restate conclusory statements from the original petition, the objections should be overruled. *Cherry*, 2007 WL 983826, at *7-9. The Court overrules Petitioner's objections.

**2.  The Superior Court did not unreasonably apply *Brady* because the delayed release of Jacobs's statements in no way prejudiced Petitioner.**

Because the Superior Court reached this matter on its merits, a petition for habeas corpus may only be granted if the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). The Court reviews the underlying facts and procedural history.

Jacobs's statement included, in relevant part,[5] that he saw Petitioner, Smith, and Harris chasing the victim and placing the victim in Brown's car. (Pet'r Am. PCRA Pet. ¶ 56.) Jacobs's

---

[5] The Court notes that a complete version of Jacobs's statement is not in the record before this Court. However, Petitioner excerpted relevant portions in his Amended PCRA Petition. (Pet'r Am. PCRA Pet. ¶

statement stated that he got into Brown's car with Petitioner and others. (Pet'r Am. PCRA Pet. ¶ 56.) After arriving at Brown's home, according to Jacobs's statement, Petitioner and Brown got into another car, while Smith and Smithwick stayed in the car with the victim. (Pet'r Am. PCRA Pet. ¶ 56.) Finally, Jacobs's statement stated that Smithwick shot and killed the victim, but Petitioner was not in the car with Smithwick at the time that Smithwick fatally shot the victim. (Pet'r Am. PCRA Pet. ¶ 56.)

The facts alleged in this statement differ from Smithwick's testimony and from Jacobs's own testimony at trial. Smithwick's testimony placed Petitioner in the car during the fatal shots and the robbery. (N.T. 7/12/2005 99:17-115:5.) During the trial, Smithwick testified that Petitioner asked the victim questions during the car ride, Petitioner stole the victim's watch while with the victim in the car, Petitioner allowed the victim to smoke cigarettes in the car prior to the murder, and that Petty had to open the door to the seat where Petitioner was sitting in the car in order to instruct Petitioner to help remove the victim's body from the car. (N.T. 7/12/2005 99:17-115:5.) Further, Jacobs testified that Petitioner did steal the victim's jewelry and money, (N.T. 7/14/05 116:12-117:19), and testified that Petitioner was in the car when the victim was shot. (N.T. 7/14/05 119:10-120:11.)

On direct appeal, the Trial Court held that there was "no surprise" because Petitioner was on notice that Jacobs was a potential witness as of the August 4, 2004 Preliminary Hearing. *Prout*, 2670 EDA 2005, slip op. at 15 (Ct. Com. Pl. July 19, 2007). Further, the Trial Court explained, while Jacobs was in protective custody, the Commonwealth was not required to notify Petitioner that Jacobs might testify. *Id.* Finally, the Trial Court held that there could be no prejudice because the statement was given to Petitioner prior to Jacobs taking the stand, and

---

56.) Petitioner did not object to the Magistrate's reliance on only those excerpted portions.  The Court relies on Petitioner's representations therein.

Petitioner, and his co-defendants, were able to fully cross-examine Jacobs. *Id.* at 14. On direct appeal to the Superior Court, the Superior Court found that Petitioner suffered no prejudice from the delayed disclosure of Jacobs's statement because "there [was] not a reasonable likelihood that the information could have affected the judgment of the jury or the result of the proceedings would have been different had the statement been disclosed to the defense." *Prout*, 2670 EDA 2005, slip. op. at 11 (Pa. Super. March 31, 2009). "If the jury believes Jacobs['s statement], [Petitioner] is merely a less active accomplice but an accomplice nonetheless…" *Id.*[6]

The Magistrate Court found that the Superior Court did not unreasonably apply *Brady* in concluding that the statement was not exculpatory or impeaching, and that the delayed disclosure was not prejudicial. (R&R at 33-38.) In his objections, Petitioner asserts that "Jacobs was an eyewitness to the crime and he excludes the Petitioner from involvement in the robbery." (Objs. at 9-10.)

To satisfy the "unreasonable application" prong of AEDPA, Petitioner must show that the Superior Court's application of *Brady* was objectively unreasonable. *Williams*, 529 U.S. 409. "[S]o long as 'fair-minded jurists could disagree' on the correctness of the state court's decision," the state court's application of federal law cannot be considered unreasonable. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). As the Superior Court correctly explained:

> A *Brady* violation consists of three elements: (1) suppression by the prosecution (2) of evidence, whether exculpatory or impeaching, favorable to the defendant; (3) to the prejudice of defendant…[A] *Brady* violation only exists when the evidence is material to guilt or punishment, *i.e.*, when there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.

---

[6] The Court notes that Petitioner also brought this claim on collateral appeal. (Pet'r's Am. PCRA Pet. ¶¶ 115-23.) In the PCRA Court's Notice to Petitioner pursuant to Pennsylvania Rule of Criminal Procedure 907, the Court explained that because this issue was brought and fully litigated on direct appeal, it could not be raised during PCRA proceedings. *Prout*, CP-51-CR-0808073-2004, slip. op. at 5 (Ct. Com. Pl. Mar. 22, 2012) (citing 42 C.S. § 9544(a)(2)). Petitioner abandoned this claim in his Concise Statement of Errors on Appeal. (Pet'r's PCRA App. ¶ 3.) This claim was properly brought before this Court. The Court reviews the Superior Court's rulings during the direct appeal.

*Prout*, 2670 EDA 2005, slip. op. at 9 (Pa. Super. March 31, 2009) (quoting *Com. v. Tedford*, 598 Pa. 639, 688-89, 960 A.3d 1, 30 (Pa. 2008) (internal citations omitted) (citing *Com. v. Paddy*, 569 Pa. 47, 800 A.2d 294, 305 (Pa. 2002); *Brady*, 373 U.S. at 83). In analyzing whether delayed disclosure of material and exculpatory evidence can violate *Brady*, even where Petitioner obtains the evidence, the Court must analyze whether the evidence was disclosed "in time for its effective use at trial." *United States v. Higgs*, 713 F.2d 39, 33 (3d Cir. 1983). "The suppression analysis hinges on whether, in light of all the circumstances, able defense counsel had a reasoned opportunity to put the exculpatory material to work." *United States v. Alvin*, 30 F.Supp.3d 323, 334 (E.D. Pa. 2014) (quoting *St. Germain v. United States*, 2004 WL 1171403, at *12 (S.D.N.Y. 2004)). Courts distinguish between "evidence used merely to assist in cross-examination of a government witness" and evidence that is useful to the defendant "in a general pretrial investigation." *Alvin*, 30 F.Supp.3d at 336 (quoting *Higgs*, 713 F.2d at 45). Disclosure of the former during trial but before the relevant witness's testimony typically would not violate *Brady*; whereas, disclosure of the latter under similar timing would. *Id.* As to the former, due process is satisfied if such material is disclosed the day the witness testifies. *Higgs*, 713 F.2d at 43-44.

The Superior Court's analysis of the prejudicial effect of the delayed disclosure of Jacobs's statement was not unreasonable.[7] First, the Court overrules Petitioner's objection that

---

[7] Petitioner argues that Jacobs's statement is "plainly exculpatory pursuant to *Brady* and its' [*sic*] progeny." (Objs. at 9.) Thus, Petitioner objects to the Magistrate Court's finding that the Superior Court did not unreasonably apply *Brady* in finding that Jacobs's statement was not exculpatory. (Objs. at 9.) The Court agrees with the objection of Petitioner that the Superior Court unreasonably applied *Brady* in finding that Jacobs's statement was neither exculpatory nor impeachable. The statement is obviously exculpatory as to Petitioner's robbery and first degree murder convictions. To the former, the statement asserts that Petitioner's co-defendant robbed the victim, but does not state that Petitioner was at the scene of or participated in the robbery. To the latter, the statement does not place Petitioner at the scene of the fatal shooting. Moreover, given that Jacobs's court testimony conflicted with his written statement, the statement is clearly useful for impeachment purposes as it goes to the witness's credibility. *See generally Giglio v. United States*, 405 U.S. 150 (1972).

this evidence would have been useful in a general pretrial investigation. (Objs. at 10.) The Court finds this line of argument wholly without merit. It is undisputed that Petitioner was made aware of the "existence of this witness" at the August 4, 2004 hearing. *Prout*, 2670 EDA 2005, slip op. at 13 (Ct. Comm. Pl. July 19, 2007). Thus, Petitioner's pretrial investigation was in no way affected by the delayed disclosure.

Thus, the question is whether Petitioner received the statement with sufficient time to fully cross-examine Jacobs about the statement. The Court finds that he did. Petitioner was able to fully cross-examine Jacobs about the inconsistencies between his statement and his testimony at trial. (N.T. 7/15/05 at 44:13-69:3.) Petitioner suffered no prejudice because the delayed disclosure did not impede Petitioner's ability to cross-examine the witness. Petitioner was fully able to "challenge the veracity of the government's witness[]." *Higgs*, 713 F.2d at 44. The Pennsylvania courts did not unreasonably apply *Brady* in holding that Petitioner suffered no prejudice from the delayed disclosure of Jacobs's statement.

### ii. The Williams claim and the search warrant claims against the Commonwealth are procedurally defaulted and no exceptions apply to excuse the default.

#### 1. These claims are procedurally defaulted.

In his objections, Petitioner asserts that the underlying due process claims against the Commonwealth related to the Williams and the search warrant issues are not procedurally defaulted. (Objs. at 8-9.) The Court overrules this objection.

The Court reviews the procedural history *de novo* as to the Williams and search warrant claims against the Commonwealth. According to Petitioner's claims, the Commonwealth did not

---

However, in order to find a *Brady* violation, the delayed disclosure of the exculpatory or impeachable evidence must be prejudicial. For the reasons that following in this Section, the delayed disclosure is obviously not prejudicial.

timely disclose Williams's name or the search warrants prior to trial. The Commonwealth maintains that they could not contact Williams until the morning of trial, when the prosecutor convinced her sister to bring her in to testify. *Prout*, 1343 EDA 2012, at 13 n. 25 (Pa. Super. July 20, 2012). Trial Counsel did not object during trial. On direct appeal, Appellate Counsel did not argue that his due process rights were violated by the Commonwealth's purported late disclosure of Williams as a witness, or by the alleged lack of disclosure of the search warrants.

In his PCRA appeal, Petitioner alleged that Trial Counsel was ineffective for failing to object to this alleged prosecutorial misconduct, and Appellate Counsel was ineffective for failing to raise this issue on direct appeal. (Pet'r's Am. PCRA Pet. ¶¶ 103-40.) The PRCA Court denied Petitioner's claims. *Prout*, CP-51-CR-0808073-2004, slip. op. at 5-7 (Ct. Com. Pl. Mar. 22, 2012). On full review by the PCRA Court, the PCRA Court reached the merits of the underlying due process violation, and affirmed the denial of such claims. *Prout*, CP-51-CR-0808073-2004, slip. op. at 13-14 (Ct. Com. Pl. July 20, 2012).

On appeal to the Superior Court, Petitioner argued that:

> trial counsel was ineffective when he failed to object to the prosecutor's misconduct in failing to provide timely discovery and direct appeal counsel was ineffective for failing to raise this issue in the direct appeal. The prosecutor improperly failed to disclose the identity, address and statement of Tiesha Williams and the warrants and evidence seized from the Lincoln Green Apartment.

(Pet'r's PCRA App. ¶ 3.) The Superior Court found that Petitioner had failed to present a factual basis for his ineffectiveness claims, and did not address the underlying due process claims against the Commonwealth. *Prout*, 1343 EDA 2012, slip. op. at 7 (Pa. Super. Jan. 9, 2013).

The Magistrate Court found that the Williams and search warrants claims against the Commonwealth were procedurally defaulted because "the Superior Court found Petitioner's ineffective[ness claim] for failing to object to untimely disclosure of Williams and the search

warrants to be waived due to lack of proper development; therefore, it did not address the underlying due process claims on the merits." (R&R at 39.)

While not explicitly stated, the Magistrate Court's holding is clearly based on application of Pennsylvania Rule of Appellate Procedure 2119. Rule 2119 explains the briefing requirements for appeal to the Superior Court. The Magistrate Court found that the Superior Court held that Petitioner's arguments as to these claims failed to comply with Rule 2119. State court decisions resting on Rule 2119 constitute independent and adequate state grounds, resulting in procedural default of the underlying claims. *Kirnon v. Klopotoski*, 620 F.Supp.2d 674, 696 (collecting cases). Thus, reasoned the Magistrate Court, Petitioner's claims are defaulted because the Superior Court found that the claims were so underdeveloped on appeal that they violated Rule 2119.

In his objections, Petitioner asserts that the Magistrate Court's holding that the underlying due process claims against the Commonwealth were procedurally defaulted. (Objs. at 9.) Petitioner argues that his PCRA brief put the Superior Court on sufficient notice that the lack of disclosure of Williams and the search warrants violated Petitioner's due process rights. (Objs. at 9.) "Petitioner avers that while the brief filed by Mr. Strutin did not specifically use the words 'due process[,'] it was clear from the nature of the argument he made that he was alleging this." (Objs. at 9.) Petitioner objects that the Superior Court was affirming the PCRA Court's dismissal of the claims on the merits, rather than a finding that the claims were waived pursuant to Rule 2119.

The Court must determine whether or not the Superior Court rested its decision primarily on federal law (an affirmance of the PCRA Court's merits determination) or an adequate and independent state ground. A federal habeas court "must first determine whether the last state

court to consider the case based its decision primarily on federal law or was interwoven with such law, in which event habeas would not be barred, or whether its judgment 'fairly appears' to rest primarily on state law." *Caswell v. Ryan*, 953 F.2d 853, 860 (3d Cir. 1992) (quoting *Coleman*, 501 U.S. at 735). "If an earlier opinion 'fairly appear[s] to rest primarily upon federal law," the Court "will presume that no procedural default has been invoked by a subsequent unexplained order that leaves the judgment or its consequences in place." *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (quoting *Coleman*, 501 U.S. at 722). "[A] federal claimant's procedural default precludes habeas review…only if the last state court rendering a judgment in the case rests its judgment on the procedural default." *Harris*, 489 U.S. at 262.

The Court affirms the Magistrate Court. In reviewing the Superior Court's opinion *de novo*, the Court agrees with the Magistrate Court that the Superior Court found Petitioner's due process claims failed to comply with Rule 2119. The Court makes this finding with the understanding that the Superior Court, and the Magistrate Court, did not explicitly reference Rule 2119. However, the Court is simply making explicit what was obvious, but unstated, in the Superior Court and the Magistrate Court's opinions. *See, e.g.*, *Rhoades v. Superintendent*, 2015 WL 4976745, at *5 n. 1 (E.D. Pa. 2015) ("Although the Superior Court does not cite to Pa.R.App.P. 2119 by name, the Court was clearly applying rule 2119 in finding petitioner's claims were waived…"). Because the Superior Court found that Petitioner's claim was underdeveloped, the claim is procedurally defaulted on habeas review. Petitioner did not argue that cause for the default and actual prejudice arising from the alleged violation of federal law, or a miscarriage of justice, would excuse the delay. *Coleman*, 501 U.S. at 750. Thus, the Court finds that the claim is procedurally defaulted and that no exceptions apply to excuse the default.

**2. Assuming, *arguendo*, that the Superior Court was affirming the PCRA Court's rulings, the Court finds that the Superior Court's affirmance of the PCRA Court did not unreasonably apply *Brady* in finding that Petitioner suffered no prejudice.**

Assuming, *arguendo*, that the Superior Court's opinion affirmed the PCRA Court's denial of these claims – rather than finding the claims waived pursuant to Rule 2119, as the Court has previously found - then this Court could reach the merits of these claims. This Court would need to apply AEDPA deference to the Superior Court's affirmance of the PCRA Court's holding. This Court could only grant the Petition if (1) the state court's adjudication of the claim "resulted in a decision contrary to, or involved in an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or if (2) the adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). For these claims, the Court would need to analyze the PCRA Court's finding that the Commonwealth did not violate Petitioner's rights under *Brady*.

As previously addressed, to find a *Brady* violation, Petitioner must show suppression by the prosecution of evidence, the suppression of which prejudiced defendant. *Brady*, 373 U.S. at 83. To find *Brady* violations for the delayed disclosure of evidence, the Court must analyze whether the evidence was disclosed "in time for its effective use at trial." *Higgs*, 713 F.2d at 33. This Court finds that the PCRA Court did not unreasonably apply *Brady* because Petitioner did not suffer any prejudice from the alleged delayed disclosure of evidence.

Petitioner maintains that the alleged withholding of evidence was a *Brady* violation because "there could be no preparation for or timely motion for suppression made." (Objs. at 9.)

The PCRA Court reached the merits of this argument, and found that there was no evidence in

the record to support these claims of prosecutorial misconduct:

> Even if petitioner could prove that the Commonwealth knew about this witness [Williams]
> and should have obtained her statement ahead of time, petitioner cannot show
> prejudice…Here, it cannot be said that petitioner was prejudiced by Ms. Williams'
> testimony as her testimony dealt only with co-defendant Richard Brown…To the extent
> that Ms. Williams' testimony concerned petitioner, it was only that she knew him through
> co-defendant Richard Brown, that she had spoken to him two times, and that she did not
> see him the night of February 7, 2003.

*Prout*, CP-51-CR-0808073-2004, slip op. at 6-7 n. 8 (Ct. Com. Pl. July 20, 2012).

> Ms. William's only testimony that concerned petitioner was that she knew him through
> Brown, had spoken to him twice, and had not seen him the night of the murder…Ms.
> Williams's testimony was not material to petitioner's guilt because she did not connect
> him in any way to the victim's murder. Therefore, her testimony was in no way
> prejudicial to petitioner…
>
> ***
>
> Petitioner does not point to any place in this voluminous record that shows the
> Commonwealth failed to timely provide the warrants and evidence to the defense, and
> thus fails to substantiate this claim. *See Commonwealth v. Price*, 876 A.2d 988, 996 (Pa.
> Super. 2005) (finding failure to argue or develop a claim with citations to record and
> relevant case law results in waiver).

Furthermore…the Commonwealth provided ample evidence to prove petitioner's guilt...

*Id.* at 13014. Thus, pursuant to *Brady*, the PCRA Court found that the alleged delayed disclosure

of this evidence did not prejudice Petitioner. As the Magistrate Court summarized, Petitioner

suffered no prejudice from the putative delayed disclosure of Williams's name and the search

warrants because "Williams testified only to her interactions with certain of Petitioner's

codefendants," and "Petitioner lacked standing to challenge" the admissibility of the search

warrants because, as previously addressed, he did not have a demonstrable privacy interest in the

Lincoln Green Apartment. (R&R at 40.) This Court agrees.

First, this Court finds that the PCRA Court appropriately applied *Brady* to the facts in this

case. Williams offered absolutely no testimony connecting Petitioner with any criminal activity.

(N.T. 7/11/05 189:19-271:20.) During her testimony on direct about the night in question, Williams did not mention Petitioner. (N.T. 7/11/05 194:18-202:2.) On cross-examination by Trial Counsel, Williams unequivocally stated that she never saw Petitioner on the night in question. (N.T. 7/11/05 255:19-21.) Further, her testimony about Petitioner was limited to her reporting that she knew "a guy by the name of AZ," that she met AZ through "Manny-Boo," and she identified "AZ" as Petitioner. (N.T. 7/11/05 205:12-206:14.) On cross-examination by Trial Counsel, Williams explained that she had only spoken to Petitioner about two times in her life and had only known him for five months. (N.T. 7/11/05 253:18-255:20.) Trial Counsel asked Williams, "the only reason [Petitioner's] name even came up in [Williams' statement] was because a detective asked [Williams]… 'Do you know a guy by the name of AZ[?]'" to which Williams responded "Yes." (N.T. 7/11/05 255:11-15.) Thus, Petitioner both had the opportunity to fully cross-examine Williams, and, Williams's testimony was not even relevant to Petitioner's guilt. The PCRA Court did not unreasonably apply *Brady* in finding that Petitioner suffered no prejudice from the delayed disclosure of Williams's name.

Second, as previously decided, Petitioner did not have standing to challenge the search warrants. *See supra* Section III(a)(i). Petitioner did not need additional time to file a suppression motion, as he alleges in his objections, because Petitioner did not have standing to file a suppression motion. Thus, the PCRA Court did not unreasonably apply the law when it found that Petitioner suffered no prejudice from the purportedly delayed disclosure. *Prout*, CP-51-CR-0808073-2004, slip. op. at 14 (Ct. Com. Pl. July 20, 2012).

In conclusion, the Court finds that the PCRA Court did not unreasonably apply the law or the facts to the law in finding that Petitioner suffered no prejudice as the alleged acts of

prosecutorial misconduct. Even if this issue was not procedurally defaulted – which the Court finds it is – the claims would still be meritless.

> **3. Finally, the Court cannot consider Petitioner's claim that default should be waived because PCRA Counsel was ineffective for failing to preserve this issue on appeal to the Superior Court because Petitioner raises this claim for the first time in his objections.**

In his objections, Petitioner asserts that if the claims are procedurally defaulted – as the Court has ruled they are – then Petitioner seeks to claim that PCRA Counsel was ineffective for failing to develop these claims before the Superior Court. (Objs. at 9.) Petitioner raises this claim for the first time in his objections. "The Court is not required to consider the new arguments raised, for the first time, in Petitioner's Objections to the R&R." *Stromberg*, 2012 WL 2849266, at *2.

Moreover, even if the Court could consider this newly raised claim – and it cannot – the Court would not find that Petitioner has suffered any prejudice from PCRA Counsel's failure to preserve these claims for appeal as the claims are meritless. *See supra* Section III(c)(ii)(3).

> **d. Objections to Claims Four are overruled.**

> **i. Claim Four is procedurally defaulted.**

Under Claim Four, Petitioner claims that Trial Counsel was ineffective for failing to object to the prosecutor's questions during the testimony of Tiesha Williams, Frank Tompkins, Vincent Smithwick, Ronald Powell, and Hyneith Jacobs that "implied to the jury that all the witnesses for the Commonwealth were in fear for their lives due to threats by the defense." (Am. Pet. at 22.).

Petitioner properly brought Claim Four before the PCRA Court. (Pet'r's Am. PCRA Pet. ¶ 239.) The PCRA Court issued Notice pursuant to Pennsylvania Rule of Criminal Procedure 907 that Claim Four was meritless. *Prout*, CP-51-CR-0808073, slip. op. at 21-22 (Ct. Com. Pl. Mar. 22, 2012). Petitioner appealed Claim Four to the Superior Court. (Pet'r's PCRA App. ¶ 4.)

On appeal, the Superior Court explained that Petitioner developed "no argument to support" claims that Trial Counsel was ineffective for failing to object to these, and other, purported instances of prosecutorial misconduct. *Prout*, 1343 EDA 2012, slip. op. at 7 (Pa. Super. Jan. 9, 2013). The Superior Court explained that "[m]erely asserting to us that counsel could have had no reasonable basis for not objecting is insufficient to warrant either a remand for an evidentiary PCRA hearing or any other type of PCRA relief." *Id.*

The Magistrate Court found that these claims were procedurally defaulted due to the Superior Court's holding that the claims were waived pursuant to independent and adequate state Rule 2119. (R&R at 21-25.) Petitioner objects that these claims were not procedurally defaulted because they were fairly presented on appeal to the Superior Court. (Objs. at 4-5.) Petitioner argues that the Superior Court's refusal to review these issues on the merits was an affirmance of the PCRA Court's merits determination. (Objs. at 5.) If seen as an affirmance of the PCRA Court's merits determination, then the claims are not procedurally defaulted. (Objs. at 5.) This Court must determine whether the Superior Court's holding was based on federal law or state law.

This Court agrees with the Magistrate Court that the Superior Court found Petitioner's claims waived due to his failure to comply with Rule 2119. Unlike in *Ylst* or *Caswell*, the two main cases cited by Petitioner, the Superior Court opinion was not an "unexplained order." (Objs. at 5 (citing *Ylst* 501 U.S. at 797; *Caswell*, 953 F.2d at 860). The Superior Court explained

32

that it was not reaching the merits of these claims because Petitioner developed "no argument to support" these claims. *Prout*, 1343 EDA 2012, slip. op. at 7 (Pa. Super. Jan. 9, 2013). This is not an "unexplained order," but rather, a holding that "fairly appears to rest primarily" on Rule 2119. As previously addressed, Rule 2119 constitutes independent and adequate state grounds, resulting in procedural default of the underlying claims. *Kirnon*, 620 F.Supp.2d at 696 (collecting cases). Because the Superior Court declined to reach the merits of Claim Four based on an independent and adequate state court rule, these claims are procedurally defaulted.

Petitioner does not allege that he can show cause for the default, or actual prejudice as a result. Petitioner does object that failure to consider his claims would amount to a fundamental miscarriage of justice. (Objs. at 6.) Petitioner has adduced no new evidence of actual innocence to establish that a fundamental miscarriage of justice excuses his default.

> **ii. Even assuming, *arguendo*, that the Superior Court affirmed the PCRA Court's denial of the claim, the PCRA Court did not unreasonably apply federal law in dismissing this claim.**

Assuming, *arguendo*, that the Superior Court's opinion affirmed the PCRA Court's denial of these claims, this Court would need to apply AEDPA deference to the PCRA Court's holding. This Court finds that the PCRA Court did not unreasonably apply *Strickland*, as this Court agrees with the PCRA Court.

Under Claim Four, Petitioner claims that Trial Counsel was ineffective for failing to "object to the Commonwealth's assertions that witnesses feared for their lives." (Am. Pet. at 22-26.) Petitioner argues that "[d]uring the questioning of Tiesha Williams,[8] Frank Tompkins,[9]

---

[8] Ms. Williams testified that after learning about the victim's death, she went to another location, and did not return to the home where she had received the news. (N.T. 7/11/05 at 202:15-25.) In response to the prosecutor's question, "Why did you leave the house?" she answered, "because I was afraid." (N.T. 7/11/05 at 202:20-25.)

Vincent Smithwick,[10] Ronald Powell[11] and Hyneith Jacobs,[12] the prosecutor repeatedly questioned the witnesses in such a way as to obliquely imply to the jury that they had received threats by the Petitioner, his co-defendants and even defense counsel." (Am. Pet. at 22 (citing N.T. 7/11/05 at 265-69, 281-82; 7/8/05 at 169-71; 7/12/05 at 125-28; 7/14/05 at 50-75, 180-84.))

The PCRA Court found that Petitioner did not suffer prejudice due to any one of these statements because none of the statements were related to Petitioner. *Prout*, CP-51-CR-0808073-2004, slip. op. 18-25 (Ct. Com. Pl. July 20, 2012).

The Court finds that the PCRA Court did not unreasonably apply *Strickland* in finding that Petitioner suffered no prejudice due to Trial Counsel's failure to object to this elicited testimony as none of the testimony directly implicated Petitioner. As all of the testimony is unrelated to Petitioner, it cannot be deemed prejudicial toward him.

Petitioner's objections are overruled.[13]

---

[9] The prosecutor asked Mr. Tompkins about whether "anyone ha[d] to convince [Mr. Tompkins]" to go speak to the police, whether Mr. Tompkins wanted to "get involved," and whether his girlfriend and sister moved out of the neighborhood. (N.T. 7/8/05 at 169:20-171:2.)

[10] Mr. Smithwick stated "Like I been threatened," and that he was moved to protected custody because like body [*sic*] harm still can get to you anywhere. Like no matter where you're at, something still can happen to you." (N.T. 7/12/05 at 125:18-126:18.)

[11] The prosecutor asked Mr. Powell "was [your wife] concerned about your safety and her safety," and "[a]re you afraid for your wife," and when Mr. Powell demurred, the prosecutor asked, "[d]id you ask me what could I do to protect your wife?" to which Mr. Powell responded "No." (N.T. 7/11/05 at 281:2-282:9.)

[12] The prosecutor asked Mr. Jacobs whether he could "go back home" and to his neighborhood after getting released from prison, to which Mr. Jacobs responded "No." (N.T. 7/15/05 at 126:10-16.)

[13] In his objections, Petitioner argues that if the claims are procedurally defaulted – as the Court has ruled they are – then Petitioner seeks to claim that PCRA Counsel was ineffective for failing to develop these claims before the Superior Court. (Objs. at 5.) Petitioner raises this claim for the first time in his objections. "The Court is not required to consider the new arguments raised, for the first time, in Petitioner's Objections to the R&R." *Stromberg*, 2012 WL 2849266, at *2.

### e.   Objections to Claim Five are overruled.

Claim Five is procedurally defaulted because it was not brought before the Superior Court. Under Claim Five, Petitioner claims that Trial Counsel was ineffective for failing to object and seek suppression of "an inflammatory videotape of the crime scene and the victim," which "showed the bound and tied victim being extracted from the water." (Am. Pet. at 27-28.) Petitioner alleges that "a videotape of the crime scene which also showed the bound and tied victim being extracted from the water," was shown during the testimony of William Trenwith of the Philadelphia Police Department. (Am. Pet. at 27.) Petitioner alleges that Trial Counsel should have objected to this video on the grounds that it was more prejudicial than probative. (Am. Pet. at 27.) This claim is procedurally defaulted because Petitioner did not fairly present it to the Superior Court.

Petitioner properly brought Claim Five to the PCRA Court. (Pet'r's Am. PCRA Pet. ¶ 240.) The PCRA Court issued Notice pursuant to Pennsylvania Rule of Criminal Procedure 907 that Claim Five was utterly meritless. *Prout*, CP-51-CR-0808073, slip. op. at 22-23 (Ct. Com. Pl. March 22, 2012). The PCRA Court wrote that:

> At the listing of February 3, 2012 this Court asked PCRA counsel about what video he was referring to in this claim. PCRA counsel explained that he was mistaken in referring to a video of the victim being removed from the water, and only intends this claim to be addressed to the photos of same.

---

In support of this claim, Petitioner cites to *Martinez v. Ryan*, 132 S.Ct. 1309 (2012). (Objs. at 5.) Under *Martinez*, "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial, if in the *initial-review* collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." 132 S.Ct. at 1320 (emphasis added). "*Martinez* made very clear that its exception to the general rule of *Coleman* applies only to attorney error causing procedural default during initial-review collateral proceedings, not collateral appeals." *Norris v. Brooks*, 794 F.3d 401, 405 (3d Cir. 2015) (citing *Martinez*, 132 S.Ct. at 1316, 1320). Petitioner's claims were presented on initial collateral review and only waived on collateral appeal. *Martinez* does not apply. *Norris*, 794 F.3d at 405.

Moreover, even if PCRA Counsel had preserved this issue for appeal, the Court would still find that these claims were meritless. *See supra* Section III(d)(ii).

*Prout*, CP-51-CR-0808073, slip. op. at 22 n. 12 (Ct. Com. Pl. Mar. 22, 2012). Petitioner abandoned this claim on appeal to the Superior Court. Petitioner claimed only that "[t]he prosecutor improperly presented *photographs* of the victim's body being removed from the Schuylkill River." (Pet'r's PCRA App. ¶ 4.) [14] Petitioner did not renew his claim related to the video. Thus, this claim was not fairly presented to the Superior Court. Claim Five is procedurally defaulted.

Petitioner has not alleged cause for the default or actual prejudice, or that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. Default cannot be excused because Petitioner has suffered no actual prejudice from this Court's failure to consider this claim. This claim is utterly meritless for exactly the same reason that PCRA Counsel originally told the PCRA Court on February 3, 2012: the videotape shown at trial did not show the victim "bound and tied." The Court has thoroughly reviewed Trenwith's testimony regarding the video (N.T. 7/11/05 at 58:20-62:6.) [15] Trenwith narrates the video as it played for the jury. (N.T. 7/11/05 at 58:20-62:6.) Trenwith describes the video in detail; yet, he makes absolutely no reference to any depiction of the victim, let alone any reference to an image of the victim "bound and tied victim being extricated from the water." (N.T. 7/11/05 at 58:20-62:6.) *De novo* review of Trenwith's testimony comports with PCRA Counsel's representation to

---

[14] Even if Petitioner intended to refer to the *photographs* of the victim shown during Trenwith's testimony, such a claim would also be unavailing. While the Court does not have all the photographs in the record before it, the Court has the two photographs of the victim being extricated from the water, and Trenwith's testimony thereto. (N.T. 7/11/05 at 36:5-42:17.) In the photographs, the only visible portion of the victim's body is his feet. (N.T. 37:6-19.) The Court notes that its interpretation of Trenwith's testimony is confirmed by the PCRA Court's opinion. The PCRA Court found that "the jury only saw a picture of the victim's boot, jeans, and leg. No blood was visible and the remainder of the corpse was obscured by water" *Prout*, CP-51-CR-0808073-2004, slip. op. at 28 (Ct. Com. Pl. July 20, 2012). The Court agrees with the PCRA Court that "[n]either the record nor the photographs suggest the jury could have become improperly biased against petitioner." *Id.*

[15] The video is not in the record before this Court. The Court finds it appropriate to rely on Trenwith's testimony of narration of the video. (N.T. 7/11/05 at 58:20-62:6.)

the PCRA Court that the video did not show these images. *Prout*, CP-51-CR-0808073-2004, slip

op. at 22 n. 12 (Ct. Com. Pl. March 22, 2012). Petitioner obviously suffered no prejudice due to

Trial Counsel's failure to object to a portion of a video that was never shown to the jury, if it

existed at all. Claim Five is procedurally defaulted and no exceptions apply to excuse the default.

####     f.   Objections to Claim Six are overruled.

Under Claim Six, Petitioner claims that Trial Counsel was ineffective for failing to object

or move to suppress Jacobs's testimony "on the grounds that Jacobs was acting as a government

agent when he intentionally questioned Petitioner as to his trial strategy and reported that

information back to the Commonwealth." (Am. Pet. at 29.) Petitioner makes two factual

allegations regarding this claim: (1) "Jacobs entered into an agreement with the Commonwealth

whereby he would testify against the Petitioner in exchange for not being prosecuted on multiple

criminal charges pending against him;" (2) "after entering into this agreement, he had contact

with the Petitioner during which Jacobs questioned the Petitioner about his case and his trial

strategy." (Am. Pet. at 29-30.) This claim is procedurally defaulted as Petitioner did not fairly

present this claim to the Superior Court.

Petitioner properly brought Claim Six before the PCRA Court. (Pet'r's Am. PCRA Pet. ¶

243.) The PCRA Court issued Notice pursuant to Pennsylvania Rule of Criminal Procedure 907

that Claim Six was meritless. *Prout*, CP-51-CR-0808073, slip. op. at 23-24 (Ct. Com. Pl. Mar.

22, 2012). Petitioner abandoned Claim Six on appeal to the Superior Court. Petitioner alleged

"[t]he prosecutor also elicited testimony that the defendants were in custody and that Jacobs met

with the defendants while in prison. (Pet'r's PCRA App. ¶ 4.) This language reflected a renewal

of a different claim from his Amended PCRA Petition. (*See* Pet'r's Am. PCRA Pet. ¶ 242.)

Petitioner's renewal of *that* claim did not give the Superior Court fair notice of *this* claim.

Petitioner has not alleged cause for the default or actual prejudice, or that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. Default cannot be excused because Petitioner has suffered no actual prejudice from this Court's failure to consider this claim. This claim is completely meritless. In support of these allegations, Petitioner asks the Court to review pages 10-43 of the trial transcript from July 15, 2005.[16] (Am. Pet. at 29-30.) Review of said testimony disproves all of Petitioner's factual assertions.

First, there is no evidence that Jacobs entered into any agreement with the Commonwealth whereby he agreed to testify against Petitioner in exchange for not being prosecuted on criminal charges unrelated to this case. Instead, the record reflects that the Commonwealth offered Jacobs use immunity as to this case. (N.T. 7/14/05 101:15-102:15.) The jury was informed about the use immunity agreement before Jacobs began to testify. (N.T. 7/14/05 101:15-102:15.) Beyond use immunity, there is no evidence that the Commonwealth promised Jacobs any help, or leniency, with his other cases:

> NINO TINARI, ESQ. FOR RICHARD BROWN: Did they promise you anything at that point in time when they spoke to you two weeks ago?
>
> JACOBS: No, sir.
>
> TINARI: Did they promise you anything last night in terms of what could happen to you and your cases that you have pending?
>
> JACOBS: Just protection, sir.
> (N.T. 7/14/05 170:23-171:2.)
>
> ***
>
> ROBERT LEVANT, ESQ. FOR ANTHONY PETTY: And by testifying here today you are hoping that that will help in convincing your probation judge to let you out of jail; correct?

---

[16] Petitioner asks the Court to review pages 10-33 of the trial transcript from July 14th and pages 33-43 of the trial transcript from July 15th. (Am. Pet. at 30.) The citation to July 14th appears to be in error as Jacobs is not testifying in that portion of the transcript.

JACOBS: I don't think that got nothing to do with me here today.
(N.T. 7/15/05 76:14-18.) In conclusion, there is simply no evidence to substantiate a claim that

Jacobs had the agreement that Petitioner alleges that he had with the Commonwealth.

Second, Jacobs never encountered Petitioner while in custody. There is absolutely no

testimony that "Jacobs questioned the Petitioner about his case and his trial strategy." The Court

has thoroughly reviewed Jacobs's testimony from July 14th and July 15th and cannot find a

single reference to Jacobs discussing the case with Petitioner after the incident. There is also no

testimony to support a contention that the Commonwealth encouraged Jacobs to speak with

Petitioner or his codefendants:

> TINARI: And then you were placed – you were at [the Curran-Fromhold Correctional
> Facility "CFCF"]; is that right?

> JACOBS: Yes.

> TINARI: And did [the Commonwealth] give you any kind of instructions at all while you
> were at CFCF concerning speaking to anybody?

> JACOBS: No, sir.

> TINARI: Did they tell you that they would like you to speak with Mr. Smithwick if he
> were there?

> JACOBS: No, sir.

> TINARI: Anybody like that, anybody involved, that you were aware of?

> JACOBS: No, sir.

(N.T. 7/14/05 170:7-19.) In conclusion, these claims are meritless and they are clearly rebutted

by the factual record. Petitioner obviously suffered no prejudice from Trial Counsel's failure to

object to Jacobs's testimony due to unfounded, factually inaccurate reasons. Claim Six is

procedurally defaulted and no exceptions apply to excuse the default.

### g. Objections to Claim Seven are overruled.

#### i. Claim Seven is procedurally defaulted.

Under Claim Seven, Petitioner alleges that Trial Counsel was ineffective for failing to object to the Trial Court's accomplice liability instruction, the cautionary charge regarding the "seven murders" to the jury, and for failing to request that a cooperating witness/corrupt motive charge be given. (Am. Pet. at 31-41.) Petitioner also claims that Appellate Counsel was ineffective for failing to argue this issue on direct appeal. All claims are procedurally defaulted and meritless. The Court addresses each in turn.

##### 1. Petitioner's claim that Appellate Counsel was ineffective is meritless.

Petitioner alleges that Appellate Counsel was ineffective for failing to bring this claim on direct appeal. (Am. Pet. at 31.) The Magistrate Court explained that "'as a general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review.' Direct appeal counsel is not ineffective for failing to raise a claim that, under Pennsylvania law, he could not have raised until collateral proceedings." (R&R at 27 n. 12 (quoting *Com. v. Grant*, 813 A.2d 726, 738 (Pa. 2002.) This Court fully agrees. Petitioner's claim was properly raised in the PCRA proceedings. Appellate Counsel did not need to raise this claim on direct appeal.

##### 2. Petitioner's issue related to the cautionary instruction about the "seven murders" is procedurally defaulted and meritless.

Petitioner alleges that Trial Counsel was ineffective for failing to object to the cautionary instruction given by the Trial Court in response to certain statements given by the Commonwealth in its opening and closing statements. (Am. Pet. at 36-40.) The Court begins by

providing the factual context. There are four relevant Commonwealth statements at issue here.

First, during cross examination by Nino Tinari, Esq. on behalf of Brown, with the Court asking

clarifying questions, solicited testify from Smithwick that he had committed other crimes in the

community that were not specific in the two plea agreements. (N.T. 7/14/05 44:3-45:22.) This

line of questioning was clearly intended to show Smithwick's potential prejudice as a witness.

Smithwick admitted during this testimony that due to his plea deal in this case, he did not except

to be charged with any state or federal crimes related to the unrelated violent crimes. (N.T.

7/14/05 45:1-22.) On re-direct, the Commonwealth asked "how many murders did you give the

police information on?" (N.T. 7/14/05 54:6-10.) Tinari objected; but the Trial Court overruled

the objection. (N.T. 7/14/05 54:8-9.) Smithwick answered "[s]even." (N.T. 7/14/05 54:10.) In

response to further clarification of this testimony, the Court intervened and asked "[w]hen you

talked to the state about the seven murders of which you are aware, did you relate any

involvement by Mr. Petty, Stutter Ant, other than the one that we're talking about today?" (N.T.

7/14/05 56:14-22.) Smithwick responded "No, ma'am." (N.T. 7/14/05 56:23.) Thus, this

evidence was only discussed as a means of elucidating Smithwick's potential prejudices; and, the

Trial Court ensured that curative testimony was given shortly after the controversial statement.

That said, Petitioner points to the fact that Smithwick testified that he only murdered for

Brown. (N.T. 7/13/05 162:20-164:9.) Smithwick went so far as to testify that he would turn

down requests for his services from other persons even if they offered to pay him the same

amount of money as Brown. (N.T. 7/13/05 6-9.) However, the Court notes that Smithwick

testified that he would perform services for Brown. He never mentions Petitioner.

Second, the Commonwealth asked Detective Joseph Bamberski, "As a result of Mr.

Harris being killed, did that start a war down the bottom?" (N.T. 7/18/05 124:17-18.) Trial

Counsel objected. (N.T. 7/18/05 124:20.) The Court sustained the objection and the question was never answered. (N.T. 7/18/05 124:21-22.)

Third, Petitioner alleges that the Commonwealth "specifically referenced the seven other murders" in its opening statement. (Am. Pet. at 36.) The record reflects that the Commonwealth did no such thing. However, the Commonwealth did obliquely reference other murders occurring in the City of Philadelphia. During opening statements, the Commonwealth said:

> This is a case where a young black man is killed and the police do their job under the strength they have which is there are people getting killed and they work on a job and move to the other and move to the other. So please don't think this is television and that they only have one murder to think about for the rest of the year. They have to move on because there are other people dying in this city and there are other families who want it solved, who want justice.

(N.T. 7/08/15 65:17-66:5.) This statement was in the context of the Commonwealth explaining that the Commonwealth would not be able to produce "CSI"-level evidence because the Philadelphia police do not have "billions of dollars to find a hair in the middle of the football stadium." (N.T. 7/08/05 65:9-15.) This section in no way references Petitioner or any of his codefendants. Nonetheless, Tinari objected to this opening. (N.T. 7/08/05 66:6-7.) The Trial Court overruled the objection because opening statements are "not evidence." (N.T. 7/08/05 66:8-11.)

Fourth, Petitioner again alleges that the Commonwealth "specifically referenced the seven other murders" in its opening statement. (Am. Pet. at 36.) Here, Petitioner is technically correct, but the context matters. The Commonwealth is attempting to explain to the jury that defense counsels have been saying throughout the trial that Smithwick might only get five to ten years for his role in this crime. (N.T. 7/20/05 159:6-10.) The Commonwealth explains that it is planning to recommend that Smithwick receive twenty to forty years. (N.T. 7/20/05 156:11-15.) However, explains the Commonwealth, the defense counsels' statement is not incorrect because

the relevant judge could still agree to give Smithwick only five to ten years. (N.T. 7/20/05 156:15-16.) To illustrate the types of consideration the relevant judge would consider, the Commonwealth engaged in a bit of role-playing:

> Smithwick's lawyer is going to say, oh, he's a great guy, he cooperated, he's in danger, people have tried to hurt him, look at what he's done, he's given information on seven murders, so there's seven mothers who finally have closure saying my baby got killed but those are the men, but in that same sentencing Ms. Margaret and the mommy on the on the other case that he pled guilty to are going to go up there and say, Judge, my baby is gone, that man killed him and I understand, and I'm thankful that he cooperated, but my baby is still gone and I want that man to go to jail so he can't hurt any other mother again.

(N.T. 7/20/05 159:16-160:6.) Thus, the Commonwealth did specifically mention the "seven murders" that Smithwick testified about earlier. Again, however, Smithwick testified that the "seven murders" did not involve the codefendants, and Smithwick testified that he only ever committed murders for Brown, not Petitioner. Nonetheless, Trial Counsel objected that the Commonwealth's reference to the "seven murders" coupled with the Commonwealth pointing in the direction of Petitioner violated Petitioner's rights. (N.T. 7/20/05 195:21-197:5.) The Trial Court overruled the objection. (N.T. 7/20/05 197:3-5.)

First, this issue is procedurally defaulted.[17] Petitioner did not raise this issue in his counseled, amended PCRA Petition. In his PCRA Petition, Petitioner did allege that Trial Counsel was ineffective for failing to object to the accomplice liability and corrupt motive instructions, that the Trial Court violated Petitioner's constitutional rights when it denied Petitioner's motion for a mistrial due to the prosecution's closing remarks about "crimes not in evidence," and that Trial Counsel was ineffective for failing to object to the prosecutor's

---

[17] The Magistrate Court found that this claim was procedurally defaulted for another reason. The Magistrate Court bundled this issue with the others under this claim. (R&R at 26.) The Court finds that unlike those issues, this issue was never presented, in any form, to the Superior Court. As such, this issue is procedurally defaulted for total failure to bring the claim to the Superior Court.

references in his closing to "crimes not in evidence." (Pet'r's Am. PCRA Pet. ¶¶ 186-90, 230, 266-80.)[18] None of these claims referenced the cautionary instruction.

Petitioner likewise did not bring this claim before the Superior Court. On appeal to the Superior Court, Petitioner alleged prosecutorial misconduct due to the elicitation of the testimony of Smithwick and Bamberski, and the Commonwealth's statement in the closing about the seven murders, but did not allege an ineffectiveness of counsel claim related to the cautionary instruction. (Pet'r's PCRA App. ¶ 5.) Thus, Petitioner abandoned an ineffectiveness of counsel claim related to any failure to object to the cautionary instruction. Because this claim was not fairly presented to the Superior Court, this claim is procedurally defaulted.

Petitioner has not shown cause or prejudice to excuse this default. First, Petitioner attempts to show cause for the default by arguing that PCRA Counsel would not have been able to argue this claim fully on appeal because doing so would require him to "denigrate his own performance." (Objs. at 6 (citing *Christeson v. Roper*, 135 S.Ct. 891 (2015))). In *Christeson*, the Supreme Court held that equitable tolling might be appropriate where counsel had not alleged a claim on behalf of an indigent client sentenced to the death penalty, where the claim would have required counsel to "denigrate" counsel's "own performance," and "threaten[] their professional reputation and livelihood." 135 S.Ct. at 894. This case is entirely inapplicable to the factual scenario here. The issue here is that PCRA Counsel did not properly raise a claim that Trial Counsel had been ineffective for failing to object to the jury instructions. Trial Counsel and PCRA Counsel are two entirely different sets of counsel. Wallace and Bowe served as Trial Counsel, while Strutin served as PCRA Counsel. PCRA Counsel would not have risked denigrating his own performance, or threating his professional reputation or livelihood, by fairly

---

[18] As to this third claim, it is factually disproven by the second claim. Trial Counsel did move for a mistrial based on the Commonwealth's closing statement. (N.T. 7/20/05 195:21-197:5.)

presenting claims about Trial Counsel's ineffectiveness on appeal to the Superior Court. Petitioner has failed to show cause excusing this default.

Second, Petitioner suffered no prejudice from the failure of this Court to reach this claim because the claim is meritless. The Superior Court addressed the underlying alleged constitutional violation on direct appeal. The Superior Court held that there "was no reason to find that the trial court abused its discretion" by allowing Smithwick to testify about the "seven murders." *Prout*, 2670 EDA 2005, slip. op. at 15-16 (Pa. Super. Mar. 31, 2009). The Court finds that the Superior Court was not unreasonable in finding that the numerous limiting instructions given to the jury were sufficient to mitigate any potential confusion about what consideration the jury could give to the "seven murders" and related testimony.[19] Trial Counsel cannot be ineffective for failing to raise meritless objections. *Werts*, 228 F.3d at 203 (citing *Carpenter*, 725 A.2d at 161). Because this Court finds that the Superior Court did not unreasonably apply the law in determining that there was no underlying constitutional violation, this Court, likewise, finds that Trial Counsel was not ineffective for failing to object to something that was not a constitutional violation. This claim is procedurally defaulted and no exceptions apply to excuse the default.

---

[19] Multiple limiting instructions were provided. The Trial Court instructed the jury that the closing argument was not evidence. (N.T. 7/19/05 89:11-90:17, 92:7-17.) After Smithwick's testimony, the Trial Court offered a cautionary instruction stating that "None of Smithwick's testimony about criminal conduct unrelated to this proceeding is before you and is not to be considered by you." (N.T. 7/14/05 93:6-94:10.) Finally, during the jury instructions, the Trial Court gave an extensive cautionary instruction to the jury against using Smithwick's testimony from other cases in consideration of Petitioner's guilt in this case. (N.T. 7/21/05 8:15-9:14.)

### 3. Petitioner's claims about the accomplice liability and cooperating witness/corrupt testimony jury charges are procedurally defaulted and meritless.

#### a. These claims are procedurally defaulted.

Petitioner alleges that Trial Counsel was ineffective for failing to object to the Trial Court's accomplice liability instruction and for failing to request that a cooperating witness/corrupt motive charge be given. (Am. Pet. at 31-41.) First, Petitioner explains that the accomplice instruction given was "technically correct," but argues that it "fail[ed] to critically identify the specific crime he was being charged as being an accomplice to." (Am. Pet. at 32.)[20] Second, Petitioner alleges that the Trial Court did not give a corrupt source instruction. (Am. Pet. at 41.) The Trial Court *did* give an instruction on accomplice/corrupt source motive. (N.T. 7/21/05 29:6-33:23.) Regardless, both claims are procedurally defaulted.

Petitioner properly brought these claims before the PCRA Court. (Pet'r's PCRA Am. Pet. ¶¶ 266-280.) The PCRA Court found that the jury instructions, "though not verbatim, [were] substantially identical to the Pennsylvania Standard Suggested Jury Instructions ("Standard Instructions") for accomplice/corrupt source testimony." *Prout*, CP-51-CR-0808073-2004, slip. op. at 30 (Ct. Com. Pl. July 20, 2012) (citing P.A. S.S.J.I. § 4.01 (2005)). The PCRA Court held that instructions were substantially similar to the Standard Instructions, thus, were properly given, and that "counsel [could] not be deemed ineffective for refraining from challenging them." *Id.* (citing *Com. v. Fisher*, 813 A.2d 761, 770 (Pa. 2002)).

---

[20]The Trial Court charged the jury as follows:
 A defendant is guilty of a crime if he is an accomplice of another person who commits that crime. A defendant does not become an accomplice merely by being present or knowing about the crime. He is an accomplice if with the intent of promoting or facilitating the commission of the crime he solicits, commands, encourages, requests the other person to commit or aids or agrees to aid or attempts to aid the other person in planning or committing the crime.
(N.T. 7/21/05 60:22-61:8.)

Petitioner appealed this claim to the Superior Court. (Pet'r's PCRA App. ¶ 5.) The

Superior Court held that:

> ...Appellant's brief submits that there could have been no reasonable basis for trial counsel's failure to object to the court's charge. However, the brief does not analyze or even reference any PCRA proffer concerning counsel's reasons for his choice not to object. Appellant wants us wither to accept outright his pronouncement that no reasonable basis was possible or to remand for an evidentiary hearing at which he might attempt to adduce some type of testimony regarding counsel's conduct – testimony appellant does not now identify. He has not given us grounds to do so. Accordingly, we will not disturb the PCRA court's ruling.

*Prout*, 1343 EDA 2012, slip op. at 8 (Pa. Super. Jan. 9, 2013).

The Magistrate Court found that the Superior Court declined to address this claim on the

independent and adequate state law ground of the *Pierce* standard. (R&R at 26-27.) Under

*Pierce*, a PRCRA petitioner alleging an ineffective assistance of counsel must satisfy a three

prong test and demonstrate that: "(1) the underlying substantive claim has arguable merits; (2)

counsel whose effectiveness is being challenged did not have a reasonable basis for his or her

actions or failure to act; and (3) the petitioner suffered prejudice as a result of that counsel's

deficient performance." *Com. v. McGill*, 574 Pa. 574, 585 (Pa. 2003) (quoting *Com. v. Pierce*,

567 Pa. 186, 786 A.2d 203, 213 (2001)). Dismissal for failure to properly develop a claim is an

independent and adequate state ground barring federal review. *Robertson v. Thompson*, 2015 WL

403872, at *5 (E.D. Pa. 2015).

The Court agrees with the Magistrate Court that the Superior Court ruled that Petitioner

had failed to meet the second prong of the *Pierce* test. Thus, this claim is procedurally defaulted.

Petitioner again attempts to show cause for the default by arguing that PCRA Counsel

would not have been able to argue this claim fully on appeal because doing so would require him

to "denigrate his own performance." (Objs. at 6 (citing *Christeson v. Roper*, 135 S.Ct. 891

(2015))). As addressed above, this is inapplicable here because PCRA Counsel and Trial Counsel were different people. Petitioner has failed to show cause excusing this default.

Finally, Petitioner objects that failure to consider this claim would be a miscarriage of justice. Petitioner presents absolutely no evidence to support his claim of actual innocence. In conclusion, this claim is procedurally defaulted and no exceptions excuse the default.

### ii. Even assuming, *arguendo*, that the Superior Court affirmed the PCRA Court's denial of the claim, the PCRA Court did not unreasonably apply federal law in dismissing this claim.

Petitioner argues that the Superior Court's holding that it would not disturb the PCRA court's ruling" meant that the Superior Court was affirming the PCRA Court's merits determination, and was not dismissing on adequate and independent state grounds. (Objs. at 7.) Assuming, *arguendo*, that the Superior Court's opinion affirmed the PCRA Court's denial of these claims – rather than finding the claims waived pursuant to the *Pierce* standard, as the Court has previously found - then this Court could reach the merits of these claims.

The PCRA Court held that the instructions were substantially similar to the Standard Instructions, and thus, were properly given instructions and "counsel [would] not be deemed ineffective for refraining from challenging them." *Prout*, CP-51-CR-0808073-2004, slip. op. at 30 (Ct. Com. Pl. July 20, 2012) (citing *Fisher*, 813 A.2d at 770). This Court agrees.

First, even Petitioner admits that the accomplice liability charge was "technically correct." "There are no magic, talismanic, words which must be uttered in order for a charge to pass muster. Rather, this Court must read the charge in its entirety with an eye toward[] assessing the overall accuracy and clarity of the instruction." *Com. v. Soto*, 693 A.2d 226, 230 (Pa. Super. 1997) (citing *Com. v. Persichini*, 444 Pa.Super. 110, 119-20, 663 A.2d 699, 703 (Pa. 1995);

*Com. v. Zewe*, 44 Pa.Super. 17, 28-30, 663 A.2d 195, 201 (1995)). Reviewing the instructions and comparing them to the Pennsylvania Standard Jury Instruction of the time, the Court finds no error. Second, the record clearly shows that the Trial Court *did* give the corrupt source instruction. This claim is meritless. Trial Counsel "cannot be deemed ineffective for failing to raise a meritless claim." *Werts*, 228 F.3d at 203 (citing *Carpenter*, 725 A.2d at 161).

In conclusion, even assuming that the Court could reach the merits of the claims, the Court would find that the Superior Court did not unreasonably apply *Strickland* in affirming the PCRA Court's denial of this claim. Petitioner's objections are overruled.[21]

### h.   Objections to Claim Eight are overruled.

### i.   Claim Eight is procedurally defaulted.

In Claim Eight, Petitioner alleges that Trial Counsel was ineffective for stipulating to the testimony of Nikisha Powell, the girlfriend of the victim. (Am. Pet. at 42-43.) The stipulated testimony included in relevant part:

> If Nikisha Powell were called to testify, she would testify that she told police the following: She was the girlfriend of Anthony Harris, that the last time she saw Anthony Harris was Friday night at about 10:30 p.m., the night before he was found dead, and he was going to Frank's house. He left 3858 Fairmount and went to 3911 Fairmount Avenue. When he left, he left with Ronald Powell, no relation to her, also known as Mal. At 12:30 a.m. she received a phone call form Anthony Harris saying to keep the door open, he would be home at 2:00 a.m., that she went to sleep at about 1:30 a.m. and that

---

[21] Finally, the Court cannot consider Petitioner's claim that default should be waived because PCRA Counsel was ineffective for failing to preserve this issue on appeal to the Superior Court because Petitioner raises this claim for the first time in his objections.

Petitioner objects that if the claims are procedurally defaulted – as the Court has ruled they are – then Petitioner seeks to claim that PCRA Counsel was ineffective for failing to develop these claims before the Superior Court. (Objs. at 9.) Petitioner raises this claim for the first time in his objections. "The Court is not required to consider the new arguments raised, for the first time, in Petitioner's Objections to the R&R." *Stromberg*, 2012 WL 2849266, at *2. Further, because this claim was presented for initial collateral review, *Martinez* does not apply. 132 S.Ct. at 1316, 1320.

Moreover, even if the Court could consider this newly raised claim – and it cannot – the Court would not find that Petitioner has suffered any prejudice from PCRA Counsel's failure to preserve these claims for appeal as the claims are meritless. *See supra* Section III(g)(ii).

Anthony Harris had not yet come home, that the next day when she woke up, Anthony was not there and she went to New York to pick up Anthony's sister Tawasha. (N.T. 7/19/05 86:24-87:21.) Petitioner alleges that the decision to stipulate to this testimony rather than to call Powell for live testimony prejudiced his defense because Powell "would have testified that she had spoken by telephone repeatedly to the victim on the night of the incident and that she was on the phone with the victim over the same time period that Smithwick and Jacobs testified the crime was in progress and that she heard nothing abnormal." (Am. Pet. at 42.) In support of this contention, Petitioner asks the Court to consider Trial Counsel's statement that "if Nikisha Powell were called to testify today, she would testify to about three lines." (N.T. 7/19/05 12:22-13:1.) Trial Counsel provided no further clarification about these "three lines." Before the stipulation was read into the record, the Court gave a colloquy to Petitioner about the stipulation; in response, Petitioner stated that he was satisfied with his representation. (N.T. 7/19/05 70:18-72:5.)

Petitioner properly raised this claim before the PCRA Court. (Pet'r's Am. PCRA Pet. ¶¶ 281-88.) The PCRA Court found that Petitioner had failed to show prejudice under *Strickland*. *Prout*, CP-51-CR-0808073-2004, slip. op. at 31 (Ct. Com. Pl. July 20, 2012). Petitioner properly appealed this claim to the Superior Court. (Pet'r's PCRA App. ¶ 6.) The Superior Court held that Petitioner had failed to proffer "testimony that he would have adduced, at a PCRA hearing, from or about his trial counsel with respect to counsel's decision to offer stipulated testimony rather than to call Powell as a live witness." *Prout*, 1343 EDA 2912M slip op. at 9-10 (Pa. Super. Jan. 9, 2013).

The Magistrate Court interpreted the Superior Court's dismissal was a waiver under *Pierce*. (R&R at 28.) This Court agrees. Even though the Superior Court does not explicitly reference *Pierce*, it is apparent that the Superior Court's dismissal of this claim rests on a finding

that Petitioner failed to meet the second prong of the *Pierce* test. Because the Superior Court found this claim waived due to *Pierce*, an independent and adequate state ground, this Court cannot review the claim anew in a habeas proceeding. *Robertson*, 2015 WL 403872, at *5.

Petitioner has not presented any cause or prejudice to excuse this default. Petitioner does not argue that failure to consider this claim would result in a miscarriage of justice. This claim is defaulted.

> ### ii. Even assuming, *arguendo*, that the Superior Court affirmed the PCRA Court's denial of the claim, the PCRA Court did not unreasonably apply federal law in dismissing this claim.

Assuming, *arguendo*, that the Superior Court's opinion affirmed the PCRA Court's denial of these claims – rather than finding the claims waived pursuant to the *Pierce* standard, as the Court has previously found - then this Court could reach the merits of these claims. The Court would address whether the PCRA Court unreasonably applied *Strickland*.

The Court finds that the PCRA Court did not unreasonably apply *Strickland* because Petitioner has not shown that he suffered any prejudice due to his counsel's putative error. The PCRA Court explained that "[a]lthough it could be argued that Powell's information called into question what time the victim was murdered, petitioner offers no argument as to how Ms. Powell's live testimony would have made any difference in the outcome of his case. The exact time of the murder is immaterial, as petitioner presented no alibi for his whereabouts later in the night." *Prout*, CP-51-CR-0808073-2004, slip op. at 31, 31 n. 42 (Ct. Com. Pl. July 20, 2012). This Court agrees.

First, Powell's stipulated statement already calls into question the timing of the murder. Smithwick testified that Petitioner shot the victim around 9:45 to 10:00 p.m. on February 7,

2003. (N.T. 7/13/05 67:6-8.) In contrast, Powell states that she saw the victim at 10:00 p.m on February 7, 2003. (N.T. 7/19/05 86:24-87:21.) Smithwick testified that he killed the victim a little after 12:30 to 12:45 a.m. on February 8, 2003. (N.T. 7/19/05 74:17-18.) In contrast, Powell states that she spoke to the victim at 12:30 a.m. on February 8, 2003. (N.T. 7/19/05 86:24-87:21.) Thus, even the stipulated testimony calls Smithwick's timing into question. Petitioner fails to explain how the live testimony would do more than the stipulated testimony already accomplished.

Second, even assuming that Powell's live testimony would have further complicated the timeline, said hypothetical testimony would still not affect the outcome of the case. It is undisputed that by 2:15 a.m., the victim was dead. By 2:15 a.m. on February 8, 2003, police officers received a radio call about persons dumping a body in the Schuylkill River, arrived at the scene, and found the body of the deceased victim. (N.T. 8:16-21:6.) Whether or not the murder occurred around 12:30 a.m. as Smithwick testified, or later, as Powell's purported live testimony would have proven, it is undisputed that the murder occurred before 2:15 a.m. Petitioner has not presented any alibi evidence for his whereabouts between 12:30 a.m. and 2:15 a.m. There is overwhelming evidence that Petitioner was at the scene of the murder, regardless of when exactly it took place. The Court holds that the PCRA Court did not unreasonably apply *Strickland* in finding that Petitioner suffered no prejudice from Trial Counsel's decision to stipulate to Powell's testimony.

### i.   Objections to Claims Nine are overruled.

### i.   Claim Nine is procedurally defaulted.

Under Claim Nine, Petitioner alleges that Trial Counsel was ineffective for failing to renew his objection to the admission of "impermissible opinion testimony from Tompkins;"

testimony which violated a previous Court ruling on a motion *in limine*. (Am. Pet. at 43-44.) Both of these claims are procedurally defaulted.

Petitioner properly brought Claim Nine before the PCRA Court. (Pet'r's Am. PCRA Pet. ¶¶ 300-09.) The PCRA Court issued Notice pursuant to Pennsylvania Rule of Criminal Procedure 907 that Claim Nine was meritless. *Prout*, CP-51-CR-0808073, slip. op. at 28-29 (Ct. Com. Pl. Mar. 22, 2012). Petitioner appealed Claim Nine to the Superior Court. (Pet'r's PCRA App. ¶ 7.)

On appeal, the Superior Court explained that Petitioner developed "no argument to support" claims that Trial Counsel was ineffective for failing to object to these, and other, purported instances of prosecutorial misconduct. *Prout*, 1343 EDA 2012, slip. op. at 7 (Pa. Super. Jan. 9, 2013). The Superior Court explained that "[m]erely asserting to us that counsel could have had no reasonable basis for not objecting is insufficient to warrant either a remand for an evidentiary PCRA hearing or any other type of PCRA relief." *Id.*

The Magistrate Court found that these claims were procedurally defaulted due to the Superior Court's holding that the claims were waived pursuant to independent and adequate state rule, Pennsylvania Rule of Appellate Procedure 2119. (R&R at 21-25.) Petitioner objects that these claims were not procedurally defaulted because they were fairly presented on appeal to the Superior Court. (Objs. at 4-5.) Petitioner argues that the Superior Court's refusal to review these issues on the merits was an affirmance of the PCRA Court's merits determination. (Objs. at 5.) If seen as an affirmance of the PCRA Court's merits determination, then the claims are not procedurally defaulted. (Objs. at 5.)

The Magistrate Court found that these claims were procedurally defaulted due to the Superior Court's holding that the claims were waived pursuant to independent and adequate state

Rule 2119. (R&R at 21-25.) Petitioner objects that these claims were not procedurally defaulted because they were fairly presented on appeal to the Superior Court. (Objs. at 4-5.) Petitioner argues that the Superior Court's refusal to review these issues on the merits was an affirmance of the PCRA Court's merits determination. (Objs. at 5.) If seen as an affirmance of the PCRA Court's merits determination, then the claims are not procedurally defaulted. (Objs. at 5.) This Court must determine whether the Superior Court's holding was based on federal law or state law.

This Court agrees with the Magistrate Court that the Superior Court found Petitioner's claims waived due to his failure to comply with Rule 2119. Unlike in *Ylst* or *Caswell*, the two main cases cited by Petitioner, the Superior Court opinion was not an "unexplained order." (Objs. at 5 (citing *Ylst* 501 U.S. at 797; *Caswell*, 953 F.2d at 860). The Superior Court explained that it was not reaching the merits of these claims because Petitioner developed "no argument to support" these claims. *Prout*, 1343 EDA 2012, slip. op. at 7 (Pa. Super. Jan. 9, 2013). This is not an "unexplained order," but rather, a holding that "fairly appears to rest primarily" on Rule 2119. As previously addressed, Rule 2119 constitutes independent and adequate state grounds, resulting in procedural default of the underlying claims. *Kirnon*, 620 F.Supp.2d at 696 (collecting cases). Because the Superior Court declined to reach the merits of Claim Nine based on an independent and adequate state court rule, these claims are procedurally defaulted.

Petitioner does not allege that he can show cause for the default, or actual prejudice as a result. Petitioner does object that failure to consider his claims would amount to a fundamental miscarriage of justice. (Objs. at 6.) Petitioner has adduced no new evidence of actual innocence to establish that a fundamental miscarriage of justice excuses his default.

ii. **Even assuming, *arguendo*, that the Superior Court affirmed the PCRA Court's denial of the claim, the PCRA Court did not unreasonably apply federal law in dismissing this claim.**

Assuming, *arguendo*, that the Superior Court's opinion affirmed the PCRA Court's denial of these claims, this Court would need to apply AEDPA deference to the PCRA Court's holding. This Court finds that the PCRA Court did not unreasonably apply *Strickland*, as this Court agrees with the PCRA Court.

Under Claim Nine, Petitioner claims that Trial Counsel was ineffective for failing to object when the prosecutor allegedly elicited testimony from Frank Tompkins that violated the court's ruling on a pre-trial motion *in limine*. (Am. Pet. at 43-45.) The Trial Court ruled that the prosecution should caution Tompkins to not offer testimony that Tompkins thought "something was wrong" and that he "figured something was going down," and that the prosecution should not quote from Tompkins's statement to police where he made such remarks. (N.T. 146:9-147:21.) During Mr. Tomkins's testimony, he testified to the following:

> CARLOS VEGA, ESQ. FOR THE COMMONWEALTH: Now, when [the victim] left, he left his coat and stuff and said, "Don't smoke my weed," did there come a time that or did you become concerned about his coming back or not?
>
> TOMPKINS: No, not actually. Like he left about 9:00, 9:30 to be exact and we just was sitting there, sitting there. Around like 12 o'clock, like he ain't call his phone to find out about nothing, he ain't do nothing, so I'm like, I tell my girl I'm like something wrong, you know what I'm saying, because Anthony ain't call his phone to even like say where my phone. He ain't call and say nothing. I ain't hear no more signs from him or nothing and hours went by, he ain't even call.

(N.T. 7/8/05 168: 3-16.) Trial Counsel did not object. Petitioner alleges that this testimony violated the motion *in limine* and Trial Counsel was ineffective for failing to renew his objection thereto. (Am. Pet. at 43-45.)

The PCRA Court held that "Even if the prosecutor's question violated the Court's ruling regarding the motion *in limine*, the error was harmless…It cannot be said that Tompkins' mere statement that he thought something was wrong contributed to the verdict, and therefore it was not prejudice. This is especially true given the overwhelming evidence presented by the Commonwealth at trial." *Prout*, CP-51-CR-0808073-2004, slip. op. at 33 (Ct. Com. Pl. July 20, 2012).

The Court finds that the PCRA Court did not unreasonably apply *Strickland* in finding that Petitioner suffered no prejudice due to Trial Counsel's failure to object to this elicited testimony. As previously addressed, there was a substantial amount of evidence that Petitioner was guilty of the crimes of which he was convicted. *See supra* Section III(a)(ii). This one error did not deprive Petitioner of a fair trial. *Strickland*, 466 U.S. at 687.

Petitioner's objections are overruled.[22]

### j.   Objections to Claim Ten are overruled.

Under Claim Ten, Petitioner alleges that the Trial Court violated his rights under the Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment when it refused to compel the Commonwealth to disclose the identity of a confidential informant. (Am. Pet. at 45-48.) The Court finds that the former is procedurally defaulted and meritless and the latter is meritless.

The Court begins by explaining the factual context. The Magistrate Court explained:

---

[22] Petitioner objects that if the claims are procedurally defaulted – as the Court has ruled they are – then Petitioner seeks to claim that PCRA Counsel was ineffective for failing to develop these claims before the Superior Court. (Objs. at 5.) Petitioner raises this claim for the first time in his objections. "The Court is not required to consider the new arguments raised, for the first time, in Petitioner's Objections to the R&R." *Stromberg*, 2012 WL 2849266, at *2. Further, because this claim was presented for initial collateral review, *Martinez* does not apply. 132 S.Ct. at 1316, 1320.

   Moreover, even if PCRA Counsel had preserved this issue for appeal, the Court would still find that these claims were meritless. *See supra* Section III(i)(ii).

Three days after the victim's body was recovered from the river, an unnamed informant told Officer McCue that a man named Khalif Goldwire had admitted to someone that he, Goldwire, Ronald Powell, and Mark Ellis had killed the victim. Prior to the beginning of trial, Smith asked the court to order the Commonwealth to reveal the identity of the CI, arguing that he needed the informant's identity to subpoena him as a witness. The court rejected the request as Smith had not filed the required pre-trial disclosure motion. Nevertheless, the trial court advised Smith that if, after interviewing the relevant police officers, Smith still thought he needed the CI's identity, he could reapply for disclosure. The following day, Smith again requested disclosure. Following an *in camera* hearing, the request was denied. (N.T. 6/30/05 at 6-9, 41). The court explained that the disclosure was not warranted as the CI did not possess firsthand knowledge; rather, the CI provided hearsay information to the officer that three other citizens had committed the crimes. (*Id.* at 3-4). No exception to the hearsay rule was argued which would have allowed this informant to testify. Additionally, the names of the three people who allegedly asserted responsibility to the CI were provided to the defense.

(R&R at 41-42 (citing *Prout*, 2670 EDA 2005, slip op. at 20-21 (Pa. Super. 2009.))

### i. Petitioner's Confrontation Clause issue is procedurally defaulted and meritless.

Petitioner alleges that the Trial Court violated his rights under the Confrontation Clause of the Sixth Amendment when it refused to compel the Commonwealth to disclose the identity of the CI. (Am. Pet. at 45-48.) Petitioner failed to raise this claim on direct appeal; Petitioner only raised the Due Process claim. (Pet'r's Trial App. ¶ 2.) The Magistrate Court held that this claim was procedurally defaulted because it was not fairly presented to the Superior Court. (R&R at 42-43.) This Court agrees. Petitioner does not object to the Magistrate Court's holding that the claim is procedurally defaulted.

Rather, Petitioner attempts to show cause for the default that "PCRA counsel was ineffective for failing to raise this and argue this claim." (Objs. at 10.) First, it was Appellate Counsel, not PCRA Counsel, who failed to raise this issue on direct appeal. The issue is not waived due to any failure of PCRA Counsel's. Insofar as Petitioner is now trying to raise a claim that PCRA Counsel was ineffective for failing to bring a claim that Appellate Counsel was ineffective for failing to raise this issue on direct appeal, the Court cannot consider such a claim.

This claim was not raised in Petitioner's Amended Petition. "The Court is not required to consider the new arguments raised, for the first time, in Petitioner's Objections to the R&R." *Stromberg*, 2012 WL 2849266, at *2.

Further, Petitioner has failed to show any prejudice. The Confrontation Clause ensures that "[i]n all criminal prosecutions, the accused shall enjoy the right...to be confronted with the witnesses against him." U.S. Const. am. VI. No testimony of the CI was ever presented at trial. Even the putative CI's testimony – which was never entered – did not implicate Petitioner. The CI was not a "witness[] against" Petitioner. There are no grounds for a Confrontation Clause violation. As such, Petitioner has not shown that he will suffer any prejudice from this Court's failure to consider this claim as this claim is meritless.

Finally, Petitioner argues that failure to consider this claim would constitute a miscarriage of justice. (Objs. at 11.) Petitioner presents absolutely no evidence to support his claim of actual innocence. In conclusion, this claim is procedurally defaulted and no exceptions excuse the default.

### ii.   The state courts did not unreasonably apply *Roviaro* in finding that Petitioner's Due Process issue was meritless.

Under Claim Ten, Petitioner alleges that the Trial Court violated his rights under the Due Process Clause of the Fourteenth Amendment when it refused to compel the Commonwealth to disclose the identity of the CI. (Am. Pet. at 45-48.)

Petitioner properly brought this claim on direct appeal. (Pet'r's Trial App. ¶ 2.) The Superior Court held that the Trial Court's ruling did not violate Petitioner's Due Process rights because "the informant did not witness the events for which appellant was being prosecuted and

did not have direct knowledge as to whether appellant was, in fact, involved in the crimes." *Prout*, 2670 EDA 2005, slip op. at 22 (Pa. Super. 2009).

The Magistrate Court held that the Superior Court did not unreasonably apply the governing federal standard, *Rovario v. United States*, 353 U.S. 53, 59 (1957), in making this determination. (R&R at 43-44.) Petitioner makes three objections that the Superior Court unreasonably applied *Rovario* in finding that the CI's identity was not "relevant and helpful to the defense." (Objs. at 11.) First, Petition objects that the CI "provided the alleged factual basis for the probable cause for the search warrant. Had counsel had this evidence he could have challenged the search and seizure in the Lincoln Apartment." (Objs. at 11.) This argument is meritless. First, Petitioner did not have standing to challenge the search warrant. Second, the CI was completely unrelated to the Lincoln Green Apartment search warrant. Third, the CI could not have even testified at a hearing related to the search warrant. As the Magistrate Court explained, the CI "claimed to know a person who claimed to know a person who was told that three individuals other than the defendants committed the crime. Petitioner plainly could not have subpoenaed this witness to testify to such inadmissible hearsay." (R&R at 44.)

Second, Petitioner avers that "had the identity of the confidential informant been disclosed, he would have been in a position to allege alternative suspects for the jury to consider." (Objs. at 11.) This argument is also meritless. The Commonwealth provided Petitioner with the names of the three people who allegedly asserted responsibility to the CI. *Prout*, 2670 EDA 2005, slip op. at 21 (Pa. Super. 2009). Thus, Petitioner had the identities of the persons whom he could have alleged were "alternative suspects."

The Court affirms the Magistrate Court's finding that the Superior Court reasonably applied *Rovario*.

**IV.     Conclusion**

Petitioner's request for relief is denied. Because Petitioner failed to make a substantial

showing of the denial of any constitutional right, the Court finds that reasonable jurists would not

disagree with this Court's holding, therefore, a certificate of appealability shall not issue. *See,*

*e.g.*, 28 U.S.C. § 2253(c)(2); *Santana v. United States*, 98 F.3d 752, 757 (3d Cir. 1996).

BY THE COURT:

/s/ C. Darnell Jones, II

_____

C. DARNELL JONES, II, J.